The opinion of the court was delivered by.
Tilghman, C. J. ’
The plaintiff contends, that no proceedings under this judgment can affect his lease, which was of a prior date. The question is, whether the judgment on Berry’s bond, is so connected with the mortgage, as to give the defendant the advantage of the mortgage. If it is, the title of the defendant is prior to that of the plaintiff. It is certain, that the bond and mortgage are securities for one and the same debt; for which the mortgagee has three remedies. ■ He may proceed by way of ejectment, to recover the possession of the premises, or he may have a Scire facias on the mortgage, or an action of debt on the bond, in which two last cases, the debt may be recovered by a sale of the premises. But there is this difference between a judgment on the Sci. Pa. and on the bond, that in the former, the execution is restricted to the subject mortgaged; but im the latter, any other property of the mortgagor may be levied on, or his person may be taken in execution. ’ The mortgagee may pursue, either, or all of the remedies which I have mentioned, tintil he obtains satisfaction for his. debt. But he eannot sell the land twice. In the case before us, therefore,'the house having been sold under the judgment, on the bond, the mortgagee could not make a second sale by Levari Fa--cias, under a Sci. Fa. on the mortgage. As the plaintiff took his lease, with legal notice of a prior mortgage, it is clear, that the léase must have given way to the mortgage, had the proceeding been by way of Scire Facias, or ejectment. ’ So that if the plaintiff’s title now prevails, it must be, because the mortgagee lost his advantage, by the form of action which he pursued: In order to decide this question, we must consider the nature of a mortgage. It is, in substance," a security for a debt, though in form, a conveyance of land. An assignment of the debt, carries with it the benefit of the mortgage, although the mortgage be not specifically assigned. From the mornént the debt is assigned, the mortgagee becomes the trustee of the assignee. So, when the mortgagor dies, without-having made an assignment, his heir becomes a trustee for his executor or administrator,, and if the executor or administrator make án assignment of the mortgage, the assignee takes the equitable interest therein, and may support an ejectment' in his own *305 name. This was expressly decided, in the lessee of Simpson v. Ammon, 1 Binn. 175, and it appears to me, that the principle established in that case, must govern the case before us. Daniel Mann had the whole interest, both in law and equity, in the mortgage given by Berry to Hugh.cs; and having this interest, he levied on the mortgaged premises, and sold them, by means of the Sheriff. After this sale, if Mann retained any right to these premises, he must.be considered as a trustee for the purchaser at the Sheriff’s salé. Then, upon the principle of Simpson v. Ammon, the defendant being cestui que trust, might maintain an-ejectment against the plaintiff in his own name, if he refused to give up the possession. But it may be objected, that after having-proceeded to a sale, under a judgment on the- bond, the-mortgagee can have no further remedy by proceeding on the mortgage- To this I cannot assent. I mentioned before, that the mortgagee has a triple remedy* which he may pursue in a triple form,, until his debt be satisfied. This is justice, this is equity. The equity of the mortgagor is, to have restitution of the land, upon payment of the debt. And the equity of the mortgagee is, to hold the- land, until this debt be satisfied. Now Mrs. MlCall can have no better title in law, or equity, than Berry the mortgagor,.under-whom she claims; for she had full notice, (I mean legal notice,) of the mortgage. Suppose that Mann, (the assignor of the mortgage,) had been the purchaser, at the Sheriff’s sale himself, and Mrs. Mt-Call had refused to give him possession, standing on her lease, which, was prior to his judgment, what should prevent him from maintaining an ejectment on the mortgage ? If the plaintiff rests her defence on the forms of law, and contends that a judgment on the-bond is in no manner to be considered as a- proceeding on the mortgage, she must take the consequences of that principle, and can make no defence against an ejectment on the mortgage. If she could not defend herself against Mann, neither could she against the defendant, who, I have shown before, stands in the place of Mann. That Mann might have supported an ejectment, will appear, by the decision of this Court, in the case of Bantleon v. Smith, 2 Binn. 146. There, an action of covenant was brought on a ground rent deed, judgment obtained, and the land out of which the rent issued, sold. The proceeds of sale were brought into court, and the question was* who should have them. The ground landlord, ■ who had obtained judgment in the action of covenant, claimed them, but tvas opposed by creditors of the defendant, who had obtained prior judgments. The court held, that the 'plaintiff was entitled to the money, because his lien on the land, and his right to distrain for the rent, remained, although he had obtained judgment in an action of covenant for the same rent. ■ And that case was compared by the court, to the case of a mortgage and bond, and it was said, that an ejectment would lie by the mortgagee, after judgment on the.bond, provided the debt was not paid. I have supposed in the course of my *306 argument, that Mann had the legal estate in him. The case is not strictly so, though for all the purposes of the argument, it may be said to be so. The legal estate was, in .fact, in Thomas Armstrong, the first mortgagee. But the money arising from the defendant’s purchase, having been applied in the first place, in satisfaction of the whole of Armstrong’s debt, his mortgage was extinguished, and the second mortgage was the only one which held the land. But if any legal right had remained in Armstrong after payment of his debt, he wTould have held as a trustee, and been compellable in equity, to transfer the legal estate to him by whom his debt had been paid; or, which would have answered the same purpose, he might have béen compelled, under our act of assembly, to enter satisfaction on record, which would have been equal to a re-conveyance. I have said enough to show, that the defendant’s title to the possession, was better than that of the plaintiff. But I cannot help adding,' that the execution under which the house was sold, having been applied immediately to the subject of the mortgage, the justice of the case is most effectually attained, by considering it as if the sale had been by virtue of a proceeding by Scire facias on the mortgage. This-mode of considering it, accords best too, with an ancient practice in this state to sell the land for its full value, without regard to liens, and apply the proceeds of sale to the payment of the several liens according to their priority as was done in this case. This is undoubtedly the way by which the land may be sold to the greatest advantage, although I am sensible that it may be productive of difficult questions, with respect to lien creditors, prior to the judgment under which the land is sold. Some questions of that kind are now depending, and therefore, I desire it to be understood, that I give no opinion, how far the rights of prior creditors by mortgage, .or judgment, can be affected by a sale under a subsequent judgment. My opinion upon the whole, is that the defendant was entitled to the possession, from the time he received a deed from the sheriff,-and therefore, judgment should be entered in his favour.
Gibson, J.
The essential circumstances of the case are these: a creditor takes a mortgage and a bond with warrant to confess judgment. The mortgage is recorded, but. judgment is not entered up, on the bond, until a year afterwards; and between the recording of the mortgage, and the entering up judgment on the bond, the mortgagor makes alease for years. An execution issues on the judgment and the mortgaged premises are levied, condemned, and sold, no scire facias having been issued on the mortgage which is then due. The lease is unexpired, and the question is, whether the lessee is entitled to hold, against the purchaser, during the residue of the term.
It is argued, that the bond and mortgage being parts of the same transaction, are in contemplation of law, one instrument, and form but one security; and consequently, that the lien of the judgment *307 on the bond, must relate to the date of the mortgage. Far otherwise. As to third persons, I admit that a mortgagor in possession, is to be considered the legal owner of the land: but as between the immediate parties, a mortgage is a conveyance of the legal title, leaving in lhe mortgagor, nothing but the benefit of a condition, or a right to have the legal estate again, by paying the debt for which it was hypothecated, at or before the day assigned for that purpose; or in ease of failure at the day, still leavinghim in equity to redeem, by payment within a reasonable time afterwards. The mortgage, therefore, operates only on the legal estate, and it is that which is sold, wheie the proceeding is on the mortgage; the judgment in which, is equivalent to a decree of foreclosure, and order of sale in chancery, the mortgagor being entitled to the surplus purchase money, if any, after payment of the debt. On the other hand, a judgment on a bond, given for the same debt, operates only on the interest that was in the obligor at the time the judgment was entered; namely, his legal right to redeem at‘or before the day of payment, and his equity of redemption afterwards: and the obligee can, strictly speaking, sell no more. The mortgagee may, however, waive the benefit of his mortgage as a security; and where a purchaser under the judgment on the bond, is induced by his acts to believe'tliat he does so, and pays a full price for the estate, the mortgagee will not be permitted to disturb him for the balance due on the mortgage: for in such case, a chancellor would enjoin him; and as to third persons, the purchaser standing in the place of the mortgagor, would be considered as having the legal title. With us, the practice has been universal, where the land has been pursued on the bond, to sell without any reservation of the lien of the mortgage; and the purchaser is, therefore, always considered as having acquired the legal, as well as the equitable estate. But it is clear beyond a doubt, that the mortgagee may, by express reservation, sell the interest bound by the judgment, subject to his own mortgage;.and where both parties proceed on the basis of such reservation, his security will not be lessened by the sale. In this view, I, with deference, take Jackson v. Hull, 10 Johns. 481, to be clear and uncontrovertible law. The purchaser under a judgment on the bond, then, acquires, where the land is sold subject to the mortgage, nothing but the equity of redemption of the mortgagor, in whose place he stands: and where the lien of the mortgage is not reserved, he acquires all the interest which the mortgagor would have had at the time of the judgment, in case the mortgage had never been given. In either view, therefore, if I am correct in my premises, there is a material* difference, as to the subject matter of the security of the bond, and that of the mortgage: and one which ought to preclude the purchaser from affecting an interest created on the land before the date of the judgment on which he purchased.
But there are other differences which forcibly bear on the question before us. Where bonds are given along with a mortgage, *308 they are usually for separate instalments which are to fall due at different times, before the mortgage; and these are recoverable respectively, as they become due. On the other hand, the mortgage is a security for -the whole debt, and -cannot be put in suit, till a year and a day after the debt has become due. These securities are, therefore, as independent of each other, as the contra'ct of the parties can make them; each being-attended with consequences peculiar to itself. They cause distinct liens; the one specific, arising from the contract of the parties, and being in the nature of a pledge; the other general, arising from the judgment of a court of record, and being incidental to the contract: and these again afford-different remedies, which, as the one or the other is pursued-, have peculiar -effects on the rights to be decided. Thus, if the -mortgage -is resorted to, the -mortgagee may maintain an ejectment; or he may, after a year and a day from the time the mortgage heeame due, proceed to a sale of the land by scire facias; but then, in recompense of .the delay, he may sell without .the condemnation of an inquest. On the other' hand, if he proceeds ás a judgment creditor on the bond, he -may instantly have execution of the mortgaged premises to the extent of the equity of redemption, of the debtor’s other land, of-his chattels, or of his person. Either of these courses he may pursue-; and either has its advantages, and its disadvantages. But he cannot pursue a middle course, and have the advan. tages of both -without the disadvantages of either. If, therefore, he has kept his bond in his pocket, he cannot enter it up at any time he pleases, and sell the mortgaged premises, before the mortgage is due, and at the same time, carry back the lien of the judgment to the date of the mortgage: for if he can do it after the mortgage is due, there .is nothing to prevent him from doing it before. He might as well claim a right to sell without a condemnation, on the ground of giving effect in another shape, to a right secured to him under the mortgage'; and this no one will-pretend he could do. But even if .the bond and mortgage were to be taken as one security, the consequence would be the same; for in a great variety of cases where a plaintiff has his choice of-a plurality of remedies, each produces a peculiar result on the nature and the extent of the compensation recovered. In an action of debt for a penalty to secure the performance of a covenant, the amount of compensation is bounded by the extent of the penalty; whereas, in an action directly on-the covenant, damages may be recovered to any amount.
On what ground then can a purchaser under the judgment, insist that its lien commenced before the judgment was rendered ?, Whatever may be the rights of a mortgagee, it is certain that a lease by a mortgagor in possession, is good as to a third persons; and that it can be avoided only by the mortgagee in an action of ejectment, or a scire facias on the mortgage. - But he may if he please affirm the lease; and he does affirm it by proceeding on a judgment which is subsequent to it. That is his own concern and no one else *309 has a right to interfere. He may pursue either security or both? and if he can effect a sale on the judgment for a sum sufficient to satisfy his debt, it is all -he wants: if he cannot, he will of course pursue the more productive security. Now what can a judgment creditor, in that particular capacity, sell ? Precisely that interest which the defendant, in his capacity of debtor by judgment, had in the land when the judgment was rendered. But here the debtor had parted with a portion of his interest, before the judgment was entered up. Suppose that, instead of making a lease for years of the whole, he had aliened a part of the land in fee: would such part be affected by the judgment and sheriff’s sale; or could the purchaser under the judgment obtain possession of it, by an inquisition before two justices? Certainly not: because the creditor did not sell it, and because the alienee could safely swear, particularly since the act of the 14th of March, 1814, that he held, by title derived from the debtor, antecedently to the judgment. -That would stop the proceedings before the justices, and if made out on the appeal to the Common Pleas, would of course furnish an available defence: and clearly the same may be affirmed of an estate for years.
It is however said that the purchaser acquires all the rights which the debtor had, and that chancery would therefore compel an assignment of the mortgage:-so that he would, at least in equity, be entitled to the possession against the lessee or alienee. Did he stipulate for an assignment? He acquires all the rights which the creditor had, in his capacity of judgment creditor, and none beside. Chancery will order a security to be assigned in favour of a surety who has paid it; or if a creditor has a lien on two funds, and another creditor has alien of a younger date, on but one of them, and the prior creditor elects to take his satisfaction out of the fund on which the younger creditor has a lien, the latter will be entitled to have him thrown upon the other fund; or to have the lien assigned to him, that he may have the benefit of all the aid it can afford. These are the onlycases which I at present recollect of the assignment of securities by order of a Courtof Chancery; and the difference between them and the case before us, is at once apparent. There is, here, no question of suretyship, or of liability of different funds to different creditors, but there is one fund liable to one debt, although on different securities. This doctrine of substitution is said to be founded in mere equity and benevolence. Now a creditor having two securities, either of which is sufficient to produce satisfaction, is not bound, nor o'ught he in conscience to proceed on the larger, and sell more than is necessary. But he proceeds on the smaller and obtains satisfaction — how can the purchaser who is supposed to know exactly what he buys, claim any thing beyond what the creditor professed to sell? Suppose the case of an unrecorded mortgage which would nevertheless be good against the mortgagor and those claiming under him: the purchaser under the judgment being *310 ignorant of its existence* could not have contemplated having the benefit of it when he purchased; yet he would-obtain it by the principle insisted on. The presumption is, that if the estate of the debtor had been sold to the extent of the larger security, the purchaser would have had to pay more for it; and thus there would have been a surplus remaining to the debtor; to the benefit oUwhich the purchaser would be .entitled on no principle of equity or conscience. This consideration is of substantial importance to the debtor; and chancery in compelling an assignment of the mortgage -would take from him what is clearly his property; and in favour of a person who had not paid a farthing for it. The purchaser therefore has no colour of equity. A mortgagee has an interest in the land only to the amount of his debt, and when that is satisfied his interest ceases. If he has a distinct security of less extent, he can sell in . pursuance of it, only what it covers. If he means to sell more, he ought in fairness to the debtor, to sell on the larger security, sd that bidders may know what they buy and regulate their bidding accordingly. I therefore can discover no equity, by which a purchaser under the smaller security is entitled to say he obtained an interest in what there is no reason to suppose the creditor intended to sell.
It will lie perceived that I have treated this last' question as if the proceeds of the sale had satisfied the mortgage. It however appears that the fact is not so; but this circumstance will produce no difference in the result, because even conceding that the sale was not subject to the mortgage, that would preclude the mortgagee from affecting only the interest which passed by the sale and the sheriff’s deed, but not from affecting the interest of the mortgagor or those claiming under him.
It must be obvious that the question ought not to be affected by any consideration arising out of the payment of the purchase money. No one will'pretend that proceeding against the land on the bond releases it from the lien of the mortgage; which is amply sufficient for the protection of the mortgagee: for if it did, that would very fairly dispose of the purchaser’s claim to an interest under the mortgage. But the purchase money although collected on the bond will be paid on the mortgage.as an existing lien, where it happens to be the oldest, just as if the bond and mortgage had been for distinct debts due to different persons.
With respect to the argument that the rent, although payable in advance, had not been actually paid at the time of the sale, and that Mrs.' M‘Call might therefore have rescinded her lease, it is sufficient to observe that the lease may have been a valuable one, and she was not bound to give up the bargain because she had not actually executed her part of t.he contract. But at all events if she had in other respects, a vested 'interest, her landlord was not bound to accept of a surrender, and his interest is to be taken into consideration as well as hers.
The whole will, I think, be found to rest on this principle. The *311 purchaser is supposed to buy the debtor’s interest in the land,' and not any security which was a lien on it; and on this ground I am of opinion that Major Lenox was not entitled to possession from the date of the sheriff’s deed, but that Mrs. Mr Call was entitled to hold for the residue of her term.
DuNCAN, J.
This comes before the court as a special‘verdict, on which it is agreed judgment shall be entered, as the court decide the right of possession in November, 1815, when Major Le-nox obtained his sheriff’s deed. The validity of the lease of Mrs. M‘Call, on account of its commencement in futuro, is not questioned, though certainly, open to animadversión, on the dangers arising from such a lease, with all the rent paid in advance; and if it embraced any period beyond three years from the time of its execution, not being recorded, I would very much doubt, -whether it could prevail against a subsequent purchaser or mortgagee without actual notice.
This question which now calls for our judgment, is one of general importance, and without any particular detail of dates is, whether a purchaser of lands, sold on a judgment entered on a bond subsequent to the execution of a mortgage, to secure its payment, shall prevail against a lessee of the same lands, who has obtained a lease mesne between the'-execution of the mortgage and entry of the judgment, where the sale is made for the fee simple value of the lands, and the money applied to the discharge of that mortgage and a prior mortgage.
What is the mortgage? It is a pledge, and more, for it is an absolute pledge, to become an absolute interest, if not redeemed at a certain time. The possession of the mortgagor is the possession of the mortgagee, and as to the inheritance they have but one title between them. The mortgagor has no power of making leases to • bind the mortgagee. He cannot, against the will of the mortgagee, do any act to diseise him. Cro. Jac. 660. Cro. Car. 304. 3 Lev. 388. and Skinner, 424. And the reason is, because in the eye of the law, so long as he receives his interest, he is virtually in possession. When the day of payment is past, in England the mortgagee has the right to the actual possession whenever he pleases: in this state, one year after the last day of payment. He may bringhis ejeetmentat any moment that he will; he is entitled to the estate with all crops growing: he is also entitled to the rents which have become due since the mortgage. And where the lease is given after the mortgage, he may bring ejectment against the tenant without notice to quit, upon the ground of the lessee being subject to every circumstance of the mortgage,, and of the mortgagee’s right of possession. He may, by assenting to the lease, create a tenancy from year to year, the lease being considered only as evidence of the quantum of rent. Brad, on Distresses, 97. It is proposed to consider, whether the purchaser does not on this sale, hold all the interest which the mortgagor had on the land, at the time *312 of the execution of the mortgage; or whether he is a purchaser of the equity of redemption only, taking the estate subject to all the intervening incumbrances: and again to consider, whether he is not virtually the holder of all these incumbrances, which he has satisfied by the payment of the consideration money to the mortgagees..
In England the equity of redemption is not extendable on an execution. The course there is, to levy the execution on the land,, and then apply to the chancellor for a decree of redemption, claiming the same satisfaction out of the equitable interest as he would have at law if it were legal. This done, he may then bring the lien by his judgment to bear upon it as the legal estate. 2 Atk. 290. 3 Atk. 200. 2 Fonbl. 168. 1 Pow. Mort. (by Coventry) 257.
But where the sale is on a judgment on the entire bond for which the mortgage was given, it would appear to me, that the entire estate of the inheritance was the subject of sale. This 1 think will appear very evident from a consideration of the nature of the security by mortgage. A mortgage is a charge upon the land. Whatever will give the monej', will carry the estate in the land along with’it. The estate in the land is the same thing, as the money due upon it. It goes to executors, will pass by a will not executed according to the statute of frauds. The assignment of the debt or forgiving it will draw the land after it, as a consequence. It would do it, though the debt were only given by parol. Weston’s Lessee v. Mowlin, 2 Burr. 969. A mortgage, though in form a conveyance of the land, is in substance but a security for the payment of the money, and the debt being paid, or in any other manner extinguised, the mortgagee becomes a trustee for the mortgagor. Wentz v. Dehaven, 1 Serg. & Rawle, 367. The debt is the principal, and the land the accessary. In Johnson v. Hall, 3 Johns. Cas. 329, KeNT, Justice said, “when the note to secure which the mortgage was given, was negotiated, the interest in the mortgage, which was given for no other purpose than to secure that note, passed of course. It required no writing, no assignment on the back of the mortgage. The assignment of the note applied equally to the note and the pledge. The one was but appurtenant to the other. Whoever was owner of the debt, was likewise owner of the security. There must be something peculiar in this case, some very special provision of the parties to induce the court to separate the ownership of the note from the ownership of the mortgage. In the eye of common sense, and of justice, they will generally be united.” Following this decision into the court of error, 1 Johns. Rep. 590, we find it to be unanimously affirmed. SfeNCe.e, Justice, who delivered the opinion of the court, observed, “ that where a debt secured by mortgage, is transferred by the mortgagee, he becomes trustee for the benefit of the person having an interest in the debt.” Now David Lenox, having paid off these mortgages became the owner of the debt, and being the owner of the debt, he heeame the owner of the .securities for the debt. The mortgagees *313 held the mortgages in trust for him. In Runyan v. Mersereau, 11 Johns. 538, the same doctrine is held. Mortgages are but securities, yi equity. The assignment of the debt or forgiving it by pa-rol draws the land after it as a consequence. The debt is considered the principal, the land as an incident only. ■ In equity the debt is the principal. The translation of the interest therein, necessarily draws after it the interest’ of the land in equity. By the assignment of the debt, the interest of the land becomes transferred in equity, through the medium and circuity of a trust, without any writing, by operation of law, notwithstanding the statute of frauds. The transaction is regarded as nothing else in substance, but a debt to which all the securities are merely accidental adjuncts, and which have no existence but by their union with the subject to which they are attached. The equity of redemption is therefore not a mere trust, but in equity is the veritable estate. Roberts on Frauds, 272 to 276. The author proceeds in 277, “ the mortgage is not a conveyance of land, qua land which passes, but a pledge or securi-, ty in all respects, subservient to a personalty incapable of existing in separation from it, existing only for the sake of it, and for no other purpose.” Thus we see the inseparable union of the bond and the mortgage: the bond (the debt,) the principal, the mortgage, but an incident, an accessary, an adjunct to it, an appurtenance to the mortgage, incapable of existence without a union with the debt. How comes it then, that a judgment for the principal, the debt, a sale for the debt, a payment of the debt, separates theni; that this does not, as a consequence, draw the land with it, I cannot understand why when the land is sold, under process of law, for the payment of the debt, the purchaser should not acquire with that the incident, as much as if he had obtained an assignment of the debt. I can understand this when it is sold on a judgment for another debt. That is but an equity of redemption, the residue of the mortgagor’s estate in the premises. But when it is sold for the very debt secured by the mortgage, I cannot contemplate them as distinct substances. In equity, the equity of redemption is the veritable estate, the united estates of the mortgagor and the mortgagee: the debt an entire one, the security entire; the-debt the principal, the security but an adjunct, an accessary which always follows the principal, as the shadow follows the substance. I do not understand the New York decision, Jackson v. Hall, 11 Johns. 462, as laying down a general principle,, that where the mortgaged premises are sold on the judgment obtained on the bond, the mortgagee can sell them again, on the mortgage. Far from it. The court lay hold of the strict, rigid, antiquated notions of the absolute right of the mortgagee after default, to gdt rid of the very iniquitous pretence of a purchaser who bought only the residue of interest remaining in the mortgagor after executing the mortgage. He purchased for 70 dollars, that which had been mortgaged for 700 dollars. The court said, this wás most, unjust, both to mort *314 gagor and mortgagee; and in such case, where positive evidence, or Xheevidentia rei, the purchase money, demonstrated that a sale only of the equity of redemption was .made understandingly by all, I would agree to this decision, on this principle. But where the evidence showed it was the fee simple, the fee simple should pass. That was the case here. The purchaser is entitled to the whole fund appropriated to secure the debt. The sale on the judgment on the bond, where it is a general one without exception or reservation, is coextensive with the whole lien on the land, and from'th,e indissoluble union of the debt and of the mortgage, it necessarily follows, that it is a cession of the united title of the mortgagor and mortgagee at the time of the execution of the mortgage. When the mortgaged premises were levied on by the fieri facias, it was an election by the mortgager to proceed in rent, against the pledge, and the sale on the venditioni was as much a sale of the pledge out and out, as if it had been made on a levari facias.
It is no objection with me, that the party has elected his remedy. It is not a case of election of alternate remedies. The remedies are cumulative, concurrent; may be all carried on together though there can be but one satisfaction. In England the mortgagee has three remedies, action of debt on the bond, ejectment, and bill in equity to foreclose. Here he likewise has three, debt on the bond, ejectment, and scire facias on the .mortgage, all provided at the same time, if he so choose,
The question, whether on a sale by .a junior incumbrancer which is more than sufficient to satisfy the prior mortgage, the mortgagee is not bound to look to the sheriff, is a vexed question, on which I give no opinion. But where he assents to the sale and receives the money, as he unquestionably may do, that the purchaser holds something more than the mere equity of redemption, cannot be denied. It is a usage universal in Pennslvania. The sheriff has a list of the judgments and of the mortgages, and discharges them in their order, and if the sale amount to a sufficient sum to discharge all, down to the incumbrance on which the sale has been made, and all are discharged, no one ever doubted, but that the purchaser held the fee simple. Now this very thing, has been done here. This is not peculiar to this state. In South Carolina the law is the same, 1 Bay, 36, and 2 Bay 82., where the land has been sold under an execution on a subsequent judgment, the mortgagee may elect to foreclose, and go against the land, or sue for the money arising from the sale.
But this question has been long since settled in this court in Bantleon v. Smith, 2 Binney, 146. A ground rent conveyance is but a security for rent, not more absolute than a mortgage. Yet where the proprietor of a ground rent obtained a judgment in covenant for arrears of rent, and sold the land, it was decided, that he was entitled to be paid out of the proceeds the whole of the rent in arrear, as well such as accrued before the judgment as after. *315 And the Chief Justice compared it to the common case of mortgage and bond, and said it never had been doubted, but that the mortgagee after judgment on the bond might proceed by ejectment. But it has been carried one step further: that even the assignee of the administrator of a mortgagee might maintain an ejectment in his own name. 1 Binn. 175. The administrator then, could himself, in his own name support ejectment; and why? Because he was the master of the debt, and being master of the debt, could use the mortgage, as an instrument to enforce payment.
Bonijudicis est ampliare jurisdictionem, is a maxim we have been obliged to resort to, in the exercise of chancery powers in granting equitable relief. The system is progressive, and as new cases in equity are daily arising, we must accommodate our common law means to meet new eases,, and although we do not directly grant chancery relief, yet, by another medium, we attain the same end, more circuitously, certainly, but not less effectually. We arrive at the same point, though by different roads. The relief is ultimately the same, though the mode' of administering it be different. Now, if we apply and exercise the powers of chancery here, we would decree Mann and Armstrong to assign the mortgage to Lenox, in which case he could recover the possession from Mrs. M‘Call. We cannot do that; but we can accomplish the same end by that which is a solid foundation of our chancery jurisdiction, by supposing that to have been done, which chancery would decree. This is the basis of all equitable ejectment, which forms a very distinguished feature in our jurisprudence, and which considering as a bill in equity, a party entitled to an interest in land, which could only be come at in’ a court of equity, can recover the land itself, with such conditions as will compel his opponent to do him justice. If Major Lenox was in possession, Mrs. MlCallcould not recover in ejectment unless she tendered the principal and interest of the incumbrances antecedent to her lease. If he could defend in ejectment on that ground, there are abundance of decisions which show, he might recover. To enforce the payment of a lien, a charge on iand, ejectment will lie. Galbraith v. Fenton, 3 Serg. & Rawle, 352. Wherever a defendant could defend his possession on an equitable claim, a plaintiff could recover possession on the same equity. So, where a plaintiff, on an equitable title, could support ejectment, defendant in such right could defend his possession, against the legal title. And if a plaintiff, in ejectment is bound in equity to make title to the defendant, for part of the premises, the court will compel him to do the defendant justice, by staying execution on the judgment, till the title to the part is secured to him. Mather’s Lessee v. Arkwright, 2 Binn. 93. The experience of every day must convince us, of the necessity of the liberal exercise of chancery powers, without which, we should not deserve the name of a court of justice.
Hence it is, that ?.s in equity, D. Lenox would .be entitled to *316 call on the legal estate to protect him, having paid the full consideration money of these mortgages to the mortgagees, I consider him as the actual owner, for every beneficial purpose, of them, and as such entitled to the possession. Ho is then clothed with the legal title, and Mrs. M(Call has no superior title in equity, for her interest was acquired with 'full notice of the prior right, notice by the registry; and She took" her lease subject to the elder title of the mortgagees. That this may be well understood, I consider the law of Pennsylvania to stand thus, that on a sale of lands on a judgment on bond,-secured by mortgage, by the sheriff, though that judgment is posterior to the execution of the mortgage, the purchaser acquires all the title of the mortgagee* and will hold against all subsequent incumbrances of whatever nature, mortgages, or judgments, and this, I am of opinion, has been the long and well established, and understood rule. In Bantleon v. Smith, 2 Binn. 146, is the doctrine recognized, not then first determined. There the proprietor of a ground rent in fee, who obtained a judgment in covenant, for the arrears, and on that judgment sold the land,- was entitled to be paid the whole rent in arrear out of the proceeds, in preference to older judgments. It had been, before so settled by President Bipdle. I except from this general doctrine, the case of several bonds, given to the same person, secured by the same mortgage, particularly where the bonds are not all held by the same hand, and confine it to a mortgage given for one entire debt, and for which entire debt, judgment has been' rendered, and the'premises sold. I deny the right of the mortgagee to proceed either by scire facias, or ejectment, to disturb such purchaser at sheriff’s sale, and contend, that it is not the equity of redemption that is sold, but all the title of the mortgagor at the time of the execution of the mortgage. Unless indeed, that which is- very improbable should ever occur, the sale was made expressly of the equity of redemption, and nothing more, evidenced by the amount of the sale compared with the value of the inheritance: and that was the case so much insisted on by the counsel for Mrs. M‘Call, decided in the Supreme Court of New-York, 10 Johns. 481. But so far from that case laying down any general principle, the reason and grounds of that decision, the general dictum, of the court is referrible only to the ancient doctrine of mortgages, and the court decide it on that rigid principle, that only the equity of redemption was sold, only the residue of interest remaining in the mortgagor, after the execution of his mortgage, proved by the purchase money, which was only 70 dollars, though it had been mortgaged to secure 700 dollars. But here the purchase money was the, full value of the fee simple estate. '
It appears to me, for all these reasons, that David Lenox, according to the terms of the agreement, is entitled to judgment.
Judgment affirmed.