Pasco v. Gamble and Poole.

SAMUEL PASCO, APPELLANT, VS. ROBERT H. GAMBLE AND WILLIAM G. POOLE, RESPONDENTS.

1. The statutes of this State provide that the mortgagor shall be entitled to the possession of the mortgaged property until after decree of foreclosure and sale; that the mortgage is a "specific lien" upon property, and that the mortgagee is incapable of acquiring possession until after decree of foreclosure, and then only by bidding and outbidding all competitors in market. An execution purchaser of the equity of redemption takes the land subject to the equitable rights of the mortgagee against the mortgagor. The possession which the law allows the mortgagor, as well as such purchaser, is subordinate to the equitable rights of the mortgagee. The right to possession exists *cum onere*. Non-residence and insolvency of the mortgagor, a failure on the part of the execution purchaser in possession as well as of the mortgagor to keep down the interest of the mortgage debt, and clear inadequacy of the mortgaged premises to pay the debt, are equities by which the court can affect the conscience of the party thus in possession. The mortgage is in equity a charge upon the lands and its produce; and under these circumstances, a receiver of the rents and profits should be appointed upon bill seeking foreclosure and sale.

2. Where the bill fails to set forth these equities, and neglects to pray for a receiver or for any sequestration of the rents and profits, it is not conformable to chancery practice to appoint a receiver upon petition without amendment of the bill. A petition in such case cannot be attended to in the matter of appointing a receiver as setting up substantial equities not otherwise alleged or claimed in the pleadings. The plaintiffs must amend their bill to make these equities available.

Appeal from Circuit Court of Jefferson.

A statement of the case appears in the opinion of the court.

*S. Pasco* for Appellant.

*G. P. Raney* for Respondents.

WESTCOTT, J., delivered the opinion of the court.

This bill is filed by trustees, Robert H. Gamble and William G. Poole, mortgagees, against the mortgagor, James E. Anderson, and Samuel Pasco, an execution purchaser of

the equity of redemption in a tract of land in Jefferson county. The sale under the execution was had subsequent to default in payment of the mortgage debt. The bill prayed a simple foreclosure and sale. After appearance and default, there was a decree *pro confesso* against the mortgagor. The execution purchaser answered that one of the mortgagees, William G. Poole, was in possession of the land during the years 1870, 1871, 1872 and 1873; that from several interviews with him he derived the impression that the mortgage debt was paid from the rents and profits of the land, and prayed that an account thereof might be taken and applied to the mortgage debt. The court, after notice to the purchaser and his tenants for the year 1875, appointed a receiver of the rents, directing the tenants to attorn to him, such order to become effective in the event the execution purchaser failed to give bond to account therefor. This order is made upon petition by the mortgagees setting up insolvency, that the land was entirely inadequate as security for the debt, and a failure upon the part of the execution purchaser to pay the taxes for the year 1874. The petition also alleged that the mortgagor, before the purchase under the execution, had removed beyond the State, and that the whole amount of the principal and interest of the debt was due. From this order the execution purchaser takes an appeal, and the general question presented for our determination is, whether, under the circumstances stated, a receiver of the rents and profits of the mortgaged property can be had in this State.

The rents and profits, of which a receiver was here appointed at the suit of the mortgagee, are rents due the execution purchaser of the equity of redemption under contracts with parties made subsequent to his entry under the sheriff's deed, which was after default in the payment of the mortgage debt or any part of the interest thereof. While such purchaser is permitted by the mortgagee to remain in possession, collecting the rents, he takes them without lia-

bility to account. In the matter of account he occupies the same relation to the mortgagee that the mortgagor in possession would; (6 Rich. 311; 10 Met. 112–15;) and the rule is, that a mortgagor in possession is not accountable to the mortgagee for profits resulting from his own use, or for rents received of tenants before and independent of any action by the mortgagee looking to the assertion of such claim, while a mortgagee in possession is always, in the absence of some special contract, accountable for such rents to the mortgagor. (1 Hilliard on Mort. 104, 134, 35, 45.) The mortgagee, by virtue of the simple existence of the mortgage, is not to have the rents under leases, either before or subsequent to the mortgage. Says Bayley, Justice, in case of a lease made after the mortgage : " The tenant may consider the mortgagor his landlord, so long as the mortgagee allows the mortgagor to continue in possession and receive the rents." (9 B. & C. 251; 11 Ad. & Ell. 307.) Here the rents became due after the institution of the foreclosure suit, and the receiver was appointed with instructions to collect the rents due and accrued before any payment to the purchaser was made. In such cases, upon an allegation of insolvency of the mortagor and inadequacy of the property as security for the payment of the debt, the general practice in some of the States is to appoint a receiver in order that the rents due, and to become due, might be applied to the mortgage debt. In other States, because of the remedies which the mortgagee of the legal estate has in his own hands, equity will not appoint a receiver on his application. In this State, as in New York, the mortgagee is deprived of any remedy by which he can acquire possession; and unless our statute deprives a court of equity of its power to appoint such receiver at the suit of the mortgagee, we think the New York rule should prevail, and that a case is here made for a receiver according to that practice, and to the practice of the English courts in analogous cases.

Our statute, (Chap. 525, p. 104, acts of 1853,) provides

that a mortgagee is a specific lien upon property, and that the mortgagee is incapable of acquiring possession until after decree of foreclosure, and then only by bidding and outbidding all competitors in market.

It is clear from this statute that any right which the mortgagee had at law to possession of the mortgaged property, until after decree of foreclosure and a purchase at the sale, is destroyed; and the question is, whether the right of the mortgagee to the rents here claimed must not fail, both in law and equity, when his right to possession under the statute ceases to exist. The relation between mortgagor and mortgagee is essentially changèd. A mortgagor entitled to possession by statute cannot be tenant at will to the mortgagee. Ejectment cannot lie against him, because he is entitled to possession. There is no action of trespass for mesne profits, because he is no trespasser. There is no action of assumpsit, for there is no promise, express or implied, to pay.

On the contrary, the implied agreement, as remarked by Chief Justice Parker, when speaking of a mortgagor rightfully in possession, is, "that the mortgagor shall take the rents and profits to his own use until he shall be lawfully dispossessed." In the State of New York, the action of ejectment by the mortgagee has been abolished. He has at law been denied all remedy to get possession, and Chancellor Kent remarks that the consequence is, that a "court of law would seem to have no jurisdiction over the mortgagee's interest. He is not entitled to the possession, nor to the rents and profits, and he is turned over entirely to the courts of equity." (4 Kent, 159; 15 Mass. 270; 1 Pick. 90; 9 Serg. & Rawle, 311.) Lord Hardwicke, in Mead vs. Lord Orrery, 3 Atk. 244, says, "as to the mortgagor, I do not know any instance, where he keeps in possession, that he is liable to account for the rents and profits to the mortgagee, for the mortgagee ought to take the legal remedies to get into the possession." In this State there is no legal

remedy for the mortgagee to get into possession; the mortgagor is entitled to possession, and, as a consequence, to the rents and profits, without account at law. We are entirely satisfied with this conclusion, so far as the legal rights of the parties are concerned; but is it true that, because the legal title is in the mortgagor, and he has all the rights of ownership, subject to the equitable lien, that in no case can equity appoint a receiver of the rents and profits? The existence of the legal right of entry and possession upon the part of the mortgagee at common law, we have seen, gave him extensive legal rights as to rents and profits, which, by virtue of his legal title, he acquired by entry or notice. These, as was said by Chancellor Kent, are gone, but at the same time the mortgage is a lien by contract. It is an encumbrance, and we are still met with the question, will not a court of equity, for the security and protection of the mortgagee— the holder of this encumbrance—appoint a receiver of the rents and profits of the property upon which it exists, in such a case as is here made? Equity will not hesitate in behalf of such an encumbrance and lien to control one properly and legally in possession, when he is doing acts affecting disastrously the security. A mortgagee out of possession, and without a bill of foreclosure, may enjoin a mortgagor properly in possession from doing any act whereby the land would become less sufficient security for the debt. (3 Atk. 210, 237; 3 Ves. 105; 2 John. Chy. 147.)

I am clear that wherever the mortgagor, legally in possession, and entitled thereto by statute or contract, refuses and fails to do any act which is necessary to the preservation of the estate, and to the doing of this act the appointment of a receiver and sequestration of the rents is necessary, that a court of equity should not hesitate to take the possession from him. Here one of the allegations is that the purchaser has failed to pay the taxes. Such tax is an annual charge upon the lands, and when a receiver is necessary to its discharge the appointment is proper. (1

Malloy, 26, note ; 1 Bland, 297 ; 3 Edw. Ch'y, 312 ; 1 Barb. Ch'y Prac. 665 ; 19 Wis. 163 ; Walk. Ch'y Repts. 43 ; 19 Iowa, 183 ; 35 Ga. 180 ; 5 Gill. and John. 314.)

At the outset of this investigation, controlled principally by the California decisions, our view was, that the statute, destroying all rights of possession to the mortgagee, destroyed also all his equitable rights and remedies by which a sequestration of the rents and profits of the land might be had. This view in California has been condemned in Nevada, where, notwithstanding the statute gives the right-of possession to the mortgagor until foreclosure and sale, the court in such a case as this sanctions the appointment of a receiver. (1 Nevada, 184.)

We are now satisfied that his right to possession was not the basis of this equity. He had no right in equity to possession as against the mortgagor, unless there were equities affecting the conscience of the mortgagor, by which his possession could be controlled for the benefit of the charge and encumbrance, and equity gave her aid when these circumstances existed, and when at law the mortgagee could not get possession, or his right there was obstructed or not available. The equity results from the fact that a mortgage is a charge upon the land; that the land is inadequate security for the debt; that the mortgagor is insolvent or resides out of the State; that both the mortgagor and the purchaser at the execution sale have paid no attention to arrears of interest due upon the mortgage debt, or to pay taxes then due and unpaid. This rule we deduce from the uniform action of courts of equity in analogous cases, where, as against the legal right of possession, equity will sequestrate and apply the rents and profits to a charge or encumbrance. The right to appropriate the rents and profits which equity gives the mortgagee, where a receiver is appointed at his instance, does not result from any specific pledge of such rents contained in the mortgage. Equity makes the mortgage, as between mortgagor and mortgagee, a charge upon

9

the rents and profits whenever the mortgagor is insolvent and the security is inadequate, and especially is it the duty of the purchaser in possession to keep down the interest. As is remarked by Coote, (on Mortgages, 342, cited with approbation by Chancellor Dargan, in Matthews vs. Preston, 6 Rich. Eq. 307, note,) "although in equity the mortgagor remains the actual owner of the land until foreclosure, entitling him while in possession to the receipt of the rents and profits without account, yet equity, regarding *the land with all its produce* as a security for the mortgage debt, will restrict the right of ownership within those bounds which may not operate to the detriment or injury of the mortgagee." This equitable charge exists upon the produce, notwithstanding the fact,. (as Chancellor Dargan says), that in a court of equity the mortgagor is regarded as the owner of the land, even after forfeiture, and the mortgagee is considered only in the light of a creditor having a lien upon the land created by the mortgage. It is to be remarked that at the time of this decision by Chancellor Dargan, the provisions of the act of the Assembly of South Carolina, of 1791, were in force, and that under that act the mortgage was declared a mere security for the debt, the fee remaining in the mortgagor. (Rice's Eq. 373.)

After the appointment of a receiver, the rents and profits coming to his hands (as is said by Baldwin, J., 4 Grat. 208) are to be distributed according to the rights and priorities of the parties " in' or to the principal subject, out of which these rents and profits issue." The effect of the statute in Wisconsin was thus announced in Wood and Moon vs. Trask, *et al.,* 7 Wis. 572 : " Our statute has essentially changed the rule of the common law in relation to the position of the fee of the mortgaged premises after condition broken. The fee does not vest upon default of the mortgagor in the mortgagee. The fee only vests upon sale or foreclosure." That court, in Finch vs. Houghton, 19 Wis. 164, sustained an appointment of a receiver upon grounds such as are set

Pasco v. Gamble and Poole.

up in this case. In Michigan, (Walker's Chy. 44,) the early rule corresponded with the rule announced in New York, South Carolina, Wisconsin and Nevada. Under a subsequent statute taking away all right to a possessory action in the mortgagee, the rule in New York was condemned by the Michigan courts. (13 Mich. 23.) After the most thorough examination I am capable of giving the subject, I think the weight of authority is in favor of the appointment.

The familiar case of a receiver, at the suit of a second mortgagee against the mortgagor in possession, where there are arrears of interest, (3 San. 109; 2 Russ. 151; 2 Kerr, 249; 1 Hog. 201; Kerr on Rec. 48; 6 Rich. 308; 4 Grat. 210,) shows that the legal right to possession is not a necessary ingredient for his appointment, for in such case the legal right is in the first mortgagee, and yet the second mortgagee can, as against the mortgagor, where there are such equities, as in this case, have a receiver of the rents and profits.

The English courts do not hesitate to appoint receivers against a mortgagor in possession, having the legal estate, at the suit of equitable mortgagees, where proper equities exist. 6 Hare, 620; 2 Russ. 150; 3 G. & C. 379; 2 Ridg. P. C. 58; Kerr on Rec'vrs. Chap. 2, Sec. 4.

The state of the security, the condition of the mortgagor, failure to keep down interest upon encumbrances, are strong equities leading to such action, and it has been said that "it is enough that a good equitable title be made to appear, and that the remedy at law should not fulfill the requisitions of justice." (13 Pri. 734; 22 Beav. 73; 26 Beav. 191; 2 J. & H. 76.) A receiver may, accordingly, in a proper case, be appointed to raise the arrears of an annuity. (13 Price, 734; L. B. Eq. 22.) So an equitable mortgagee may have a receiver appointed, if the payment of interest on his security be in arrear. So if a person takes a conveyance of a legal estate, subject to equitable interests, he must satisfy these equitable interests, or submit to the appointment of a

receiver. (1 Mer. 54.) So where tenants for a particular estate, for life or in tail, neglect to keep down the interest due upon encumbrances upon the estates, courts of equity will appoint a receiver to receive the rents and profits in order to keep down the interest, for this is but a mere act of justice to the encumbrancers. (Story, 11 Ed. § 838; Jeremy on Eq. Jur. B. 1 Ch. 7, § 1, pp. 251–2; 1 Schl. & Lefr. 407, note; 3 Mer. 560.) These cases are mentioned, not as precedents *in all respects* strictly applicable to the case of a mortgagor in possession under our statute, but to show that in most cases the legal right to possession exists *cum onere*, and that equity attaches to that possession certain duties, which, if not discharged, it will, when necessary to their discharge, through its receiver, sequester the rents and profits of an estate. Our conclusion is, that the mortgagor or purchaser of the equity of redemption under our statute has the right to possession, yet, that such possession is subordinate to the equitable rights of the mortgagee. That, in case of non-residence and insolvency of the mortgagor, a failure on the part of an execution purchaser in possession, as well as of the mortgagor, to keep down the interest of the mortgage debt, and clear inadequacy of the mortgaged premises to pay the debt, are equities by which the court " can affect the conscience of the party in possession under legal title." And, as the mortgage in equity, where the mortgagor is looked upon as the real owner, is a charge upon the land and its produce, the court, under these circumstances, should appoint a receiver in order to the sequestration and application of the rents and profits. The purchaser here in possession has his title subject to the equitable interests of the mortgagee, and he must satisfy them. 1 Mer. 54.

We see nothing improper in the frame of the order here made, and the only remaining question is, whether the appointment was properly made upon petition and notice after answer. The objection made is that the bill

does not make a case for a receiver, does not even pray for a receiver, and that the equities sought to be made operative to that end are set up by petition only. It is true, that the inadequacy of the security, the insolvency of the mortgagor, and the failure to pay the taxes, are not mentioned in the original bill. It is also true that the bill has no prayer for a receiver, or for the application of the rents and profits to the mortgage debt. That the mortgage debt is due, that no interest has been paid, and that the mortgagor is a non-resident, does, however, appear otherwise than by the petition. The rule applicable to this petition is, that, like a motion, it cannot be attended to as laying a foundation for equities not otherwise alleged or claimed in the pleadings. The bill, in this case, contained no prayer for a receiver, set up no equities as to the rents and profits, except the existence of the mortgage debt and the non-payment of the interest thereon ; nor did it ask any relief as to the rents and profits.

When the petition was filed in this case, the cause stood upon bill and answer, the application not being in. Upon a petition setting up these equities and asking leave to amend the bill, such amendments as were necessary to make them available should have been allowed in this case in conformity to Rule 42 of Practice in Suits in Equity. The amendment should not have been allowed, however, except upon a payment of costs, as it was the neglect of the plaintiffs which rendered it necessary, in order to the proper presentation of their case.

The order appointing the receiver in this cause is reversed without prejudice to an application to the chancellor to amend the bill as the plaintiffs may be advised, (such application to be considered as made after answer and before replication,) and to the appointment of a receiver upon the amended pleadings. In the meantime, all parties are enjoined from making any disposition of the rents and profits of the mortgaged land until the further order of the Circuit

Court. The order is reversed, and the case remanded for further proceedings not inconsistent with this opinion and conformable to law.

