ABBIE B. LOWELL *vs.* MARY F. DOE and others.

July 18, 1890.

**Mortgage—Foreclosure Suit—Appointment of Receiver.**—The statute declaring that a mortgage of real property shall not be deemed a conveyance, so as to enable the mortgagee to recover possession without foreclosure, does not abrogate the power of the court to appoint a receiver of such property in an action to foreclose the mortgage, when that becomes necessary for the protection of such equitable rights of the mortgagee as do not rest upon the common-law principle of a legal estate transferred by the mortgage.

**Same—Receiver of Hotel Property held Properly Appointed.** — The appointment of a receiver of valuable hotel property sustained, upon the grounds that the mortgagors had allowed the hotel business to be discontinued, the property being especially valuable for that purpose; that the closing of the hotel would depreciate the value of the property so as to become insufficient security for the debt, the mortgagors being insolvent; that the insurance stipulated by the mortgagors to be maintained for the security of the mortgagees was being jeopardized by such disuse; and that taxes were allowed to become delinquent contrary to the stipulations of the mortgage.

**Same—Where Property is Homestead.**—The homestead rights of mortgagors in the mortgaged property are subject to the ordinary legal and equitable rights of the mortgagees as such.

Appeal by defendants from an order of the district court for Washington county, *McCluer, J.,* presiding, appointing a receiver.

*J. N. Castle, Fayette Marsh,* and *C. P. Gregory,* for appellants.

*Searles & Gail,* for respondent.

DICKINSON, J. This is an appeal by the defendants from an order appointing a receiver of mortgaged real estate pending this action to foreclose the mortgage. The mortgaged premises consist of two lots in the city of Stillwater, upon which stands a large building erected for the purposes of a hotel, and adapted to that use. For many years the property has been used for that purpose. It is the largest and the principal hotel in the city of Stillwater. In December, 1887, the property was purchased by the defendant Mary F. Doe and her

husband, Alpheus K.; and, to secure payment of a part of the purchase price, they executed to the vendor a mortgage on the property for the sum of $20,000, payable three years thereafter, with interest payable semi-annually. The sale also included the furniture and fixtures in the hotel, to secure the purchase price of which a chattel mortgage was given upon the property for $6,000, payable in one, two, and three years. This plaintiff has succeeded to the ownership of these mortgages. This action to foreclose the real-estate mortgage was commenced in December, 1889, for default in the payment of interest due in June, 1889. By the terms of the mortgage, the mortgagors agreed to keep the property insured for the sum of $10,-000, for the benefit of the mortgagee, and to pay all taxes and assessments on the property. The use of the property as a hotel was continued by the mortgagors, or under them, until November, 1889, when that use was discontinued, and the hotel closed, for the reason, as assigned by the defendants, that the business had become for the time unprofitable, by reason of general business depression, and a diminution of hotel patronage generally. They alleged, however, that they intended to reopen the hotel in the early part of the year 1890.

Upon this interlocutory proceeding for the appointment of a receiver, it is considered that the case, as presented to the district judge, warranted the conclusion by him that the mortgagors were insolvent; that the mortgagors had no such purpose as would probably be carried into execution, to reopen the hotel; that the property was more valuable for hotel purposes than for any other; that the discontinuance of that business and the closing of the hotel, for a considerable time, would result in a depreciation of the value of the property to such an extent that it would become insufficient security for the mortgage debt, even if the security would be otherwise adequate; that, by reason of the closing of the hotel, the insurance which had been effected for the benefit of the mortgagee was likely to be cancelled, and that it had been in part cancelled; that it may be difficult to procure other insurance, if the use of the property for the purposes for which it is adapted should not be resumed, even if the defendants were disposed to observe the stipulation of the mortgage

in this respect, and procure other insurance; that taxes on the property for the year 1888 had been suffered to become delinquent. According to the established principles of equity jurisprudence, unaffected by modern changes in the legal rights of mortgagors and mortgagees, the case is one which would have justified the appointment of a receiver pending a suit for foreclosure, if for any reason the general legal right of the mortgagee to recover the possession of the property should be unavailable.    2 Jones, Mortg. §§ 1516, 1517, 1521; Beach, Rec. §§ 418, 518, 521; High, Rec. §§ 643, 646.

But the contention here is that, since the change which has been effected in the legal relations of mortgagors and mortgagees, the former have an absolute right to the possession of the mortgaged property until their title shall have been extinguished by foreclosure, and that the courts have no longer the power, by the appointment of a receiver, to dispossess the mortgagor. Our statute declares that "a mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure." Gen. St. 1878, c. 75, § 29. In numerous decisions of this court, this statute has been recognized as changing the common-law relations and rights of mortgagors and mortgagees. The mortgagee is no longer entitled to the possession of the mortgaged premises before foreclosure by reason of his having any title or estate in the land. The mortgagor, having the legal title, may without doubt remain in possession until his title is divested, unless, in the application of the established principles of equity, and consistently with the legal title remaining in the mortgagor, the court shall find it necessary to lay its hand upon the property for the protection of the equitable rights of the mortgagee. The exercise of this power by courts of equity in the past was not based upon the ground that the legal title had passed from the mortgagor to the mortgagee, but upon the equitable rights of the mortgagee to have his security preserved so that it should be adequate for the satisfaction of the mortgage debt. Indeed, this power was exercised in favor of those who had no legal title, as in the case of junior mortgagees, and of securities given by the deposit of title-deeds. *Berney* v. *Sewell,* 1 Jac. & W. 647; *Bryan* v. *Cormick,* 1 Cox, 422; *Mea-*

*den* v. *Sealey,* 6 Hare, 620; *Holmes* v. *Bell,* 2 Beav. 298; High, Rec. §§ 640, 658, 682; Adams, Eq. 125. The jurisdiction of equity in the appointment of receivers, long exercised upon grounds peculiar to courts of equity, is not to be deemed to have been taken away by the statute unless that is its necessary effect, or at least its obvious purpose. Such is not the obvious purpose or necessary effect of this statute. It is to be read in harmony with the existing principles of equity jurisprudence, if the intention to do away with the application of such principles is not manifest. *Washburn* v. *Van Steenwyk,* 32 Minn. 336, 349, (20 N. W. Rep. 324;) *Blackman* v. *Wheaton,* 13 Minn. 299, (326.) It is very clear from the language of this statute, the meaning of which is plain, precise, and impossible to be misunderstood, that it was intended to abrogate the common-law doctrine that a mortgage created an estate upon condition in the mortgagee, which, upon default in the performance of the condition, became absolute, entitling the mortgagee to recover possession. But the language of the act expresses no more than this; and it cannot be fairly construed as abrogating, also, the power of courts of equity to afford to mortgagees such remedies for the protection of their equitable rights as, upon equitable grounds, those courts had always been accustomed to afford, and the granting of which did not rest upon the doctrine of the legal title or right of possession being in the mortgagee.

Other legislation than that before referred to, to some extent supports the conclusion that the statute law has not abrogated the power of courts in the exercise of their customary equitable jurisdiction to appoint receivers in such cases. The act above recited was embodied in the Territorial Revision of 1851, and has, we think, ever since been retained. But, as early as 1853, it was enacted that "in all civil actions, wherein receivers may be necessary, or where, in chancery suits or proceedings, they were authorized to be appointed previous to this act taking effect, they may hereafter be appointed, if necessary." Laws 1853, *c.* 9, § 9; Pub. St. (1858) *c.* 57, § 27. And, in the Revision of 1866, (chapter 66, § 189,) it was provided that receivers might be appointed under certain specified conditions; and, "*fifth, in such other cases as* are now provided by law, or *may be in accordance with the existing practice,* except as otherwise provided

herein." Here is a distinct recognition of the customary jurisdiction of courts of equity in the appointment of receivers.

Our conclusion is that the legal right of the mortgagor to the possession of the mortgaged premises prior to foreclosure is still subject to the customary equitable jurisdiction of the court to appoint a receiver, when that becomes necessary for the protection of such equitable rights of the mortgagee as do not rest upon the common-law principle of a legal estate transferred by the mortgagor. *Hollenbeck* v. *Donnell,* 94 N. Y. 342; *Finch* v. *Houghton,* 19 Wis. 150; *Schreiber* v. *Carey,* 48 Wis. 208, (4 N. W. Rep. 124;) *Pasco* v. *Gamble,* 15 Fla. 562; *Hyman* v. *Kelly,* 1 Nev. 179. We have not failed to observe the decisions in Michigan and California relied on by the appellants, and opposed to our conclusion.

It has always been considered that this authority should be exercised with great caution, and only upon a satisfactory showing of the necessity for it. Whether a receiver should now be appointed *pendente lite* from the mere fact of the insolvency of the debtor and the insufficiency of the security, at least, if that is not becoming depreciated by reason of the culpable acts or neglect of the mortgagor, may, perhaps, be doubted; but we are not called upon to decide that. In this case, stronger grounds for this interposition of equity are added to those above mentioned, in the non-payment of taxes, the probable cancellation of the insurance, and the cessation of the use of the property for hotel purposes, resulting, as may be considered, in a permanent impairment of the value, and to the ultimate loss of the holder of the mortgage. The appointment of a receiver rests largely in the discretion of the court, and we cannot say that this discretion was not wisely and justly exercised in this case. Whether the proceeds of the use of the property by the receiver, after deducting what may be necessarily expended in keeping the property in repair, paying taxes, and keeping up the insurance, as stipulated in the mortgage, should be ultimately paid over to the mortgagors or to the plaintiff, is a question not now before us.

After the defendants ceased to use the property for hotel purposes, they continued to reside in the house, and claim that their possession of a homestead in the property cannot be disturbed by the appoint-

ment of the receiver.   A sufficient answer to this is that, by the terms of the homestead law, (Gen. St. 1878, *c.* 68, § 2,) the homestead exemption "shall not extend to any mortgage thereon lawfully obtained." The homestead rights of the mortgagor are subject to the ordinary legal and equitable rights of the mortgagee in respect to the mortgaged premises, which may be enforced by the appropriate remedies.

Order affirmed.