# FARM MORTGAGE LOAN COMPANY, a Foreign Corporation, Respondent, v. ED PETTET and Della Pettet, Appellants.

(36 A.L.R. 598, 200 N. W. 497.)

**Mortgages — equity cannot appoint a receiver and thereby deprive mortgagor of right to use and benefit of mortgaged property until expiration of period of redemption.**

1. Since the enactment of chap. 132, Session Laws, 1919, the mortgagor is entitled to the rents, use and benefit of the mortgaged property until the expiration of the period of redemption and a court of equity has no power to deprive the mortgagor of such rents, use and benefit by appointing a receiver of the crops, pursuant to § 7588, Comp. Laws, 1913, authorizing the appointment of receivers in certain cases.

**Mortgages — failure to pay interest and taxes, held not such waste as to authorize appointment of receiver during period of redemption.**

2. Under the facts in the record, failure to pay interest and taxes does not constitute such waste as to authorize the appointment of a receiver of the crops or the rents and profits during the period of redemption, and in connection with foreclosure proceedings at the instance of the mortgagor.

**Personal property — severed crops — receiver for same cannot be appointed before the foreclosure sale.**

3. Severed crops are personal property. For reasons stated in the opinion, it is held, that a receiver of severed crops, with authority to seize them and apply them in payment of past due interest, or on the mortgage indebtness, cannot be appointed before the foreclosure sale.

Opinion filed September 8, 1924.

Mortgages, 27 Cyc. p. 1236 n. 62; p. 1623 n. 89; p. 1625 n. 2; p. 1731 n. 12. Waste, 40 Cyc. p. 497 n. 1.

In District Court, Stutsman County, *Coffey,* J.

Defendant has appealed from that part of the judgment which imposes an equitable lien on the crops to the extent of the rental value of the land per year for the purposes of securing payment of interest

---

Note—(1) On right of mortgagee to receiver, see annotation in 4 A.L.R. 1415; 26 A.L.R. 33; 36 A.L.R. 609; 19 R. C. L. 560; 3 R. C. L. Supp. 956; 5 R. C. L. Supp. 1038.

(3) Crops as subject to levy and sale on execution, 8 R. C. L. 357.

upon a prior mortgage and for unpaid taxes, and for the appointment of a receiver to enforce such lien.

Modified and affirmed.

*M. C. Freerks,* for appellants.

*Aylmer & Aylmer,* for respondent.

JOHNSON, J.   This is an action by second mortgagee to foreclose a mortgage on defendants' homestead and for the appointment of a receiver.   Defendants appeal from a part of the judgment only.   Defendant owned a quarter section of land in Stutsman County.   In 1920 he made a first mortgage upon the land for $3500.00 and, to plaintiff, a second mortgage for $3768.00.   In 1922 defendant went through bankruptcy.   He has continuously remained in possession of the land.   Defendant did not pay certain interest upon the first mortgage nor the taxes for the years 1920, '21, and '22.   Plaintiff paid such interest amounting to $285.00 on September 29, 1922.   This action was instituted in March, 1923.   Defendant, with his wife joining, interposed a general denial coupled with a specific denial of personal liability.   Trial was had to the court in June, 1923.   The trial court, in addition to the above facts, found that there was due, on the first mortgage, over $3675.00; on the second mortgage, over $4617.00; for taxes, $813.00; all of which aggregated over $9105.00 against the land; that the land was worth not to exceed $6400.00, thus leaving $2705.00 as an excess of encumbrance above land value; that the rental value of the land per farming season was $500.00.   The trial court concluded as a matter of law:—That defendants were guilty of *committing waste concerning the premises and thereby depreciating plaintiff's security by their failure to pay the interest and taxes above mentioned;* that the annual rental value of the land constituted a special fund for the liquidation of such sums constituting waste committed; that the crops growing and harvested and the grain raised upon the land were adjudged a special fund out of which should be paid the amount of waste so committed to the extent of $500.00 per farming season and until the expiration of the period of redemption; and that plaintiff was entitled to an equitable lien upon the crops for such amount.   The court ordered a foreclosure and sale of the premises, appointed a receiver of the crops grown on the premises during the period of redemption, fixed his bond, and directed

such receiver to take possession of the crops and hold them as a special fund out of which to pay past due taxes and interest on prior encumbrances, the taxes having been paid by the mortgagee. Judgment was entered accordingly, August 14, 1923, decreeing that plaintiff had an equitable lien for such purpose, on the crops of 1923, whether severed or not, and of those to be grown during the period of redemption. Defendant has appealed from the part of the judgment which concerns the particular conclusions of law, as to the appointment and powers of a receiver, above stated.

That part of the judgment of the trial court that decrees a foreclosure is not challenged on this appeal. It is only the judgment that the plaintiff is entitled to the appointment of a receiver of the crops or rents and profits during the period of redemption and also of the crops harvested in 1923, whether severed or not on the date of the decree, that the appellants complain. We shall dispose of these propositions in the order stated.

The authorities principally relied on by the respondent in support of the order of the trial court appointing a receiver of the crops, during the period of redemption, proceed, in part, on the theory that historically a court of equity has always had the power to appoint a receiver thereof in certain circumstances, and that there is such waste in failing to pay taxes and interest upon prior encumbrances as will justify a court of equity in appointing a receiver of the rents and profits.

There are two main reasons why the order of the trial court must be reversed. In the first place, even if, under some circumstances, a receiver of the rents and profits may be appointed in this state,—a question that need not be answered now—and such rents and profits applied to the prevention of waste in the sense in which that term has been used by our legislature, nevertheless the case presented is not one in which it is in the power of a court of equity to appoint such a receiver, with direction to take the crops from the mortgagor and his family and apply the proceeds thereof in payment of taxes or past due interest that may or do constitute a prior lien or burden on the property covered by the mortgage. Lastly, we believe that the legislature, in unequivocal language, established as a fundamental right in the mortgagor that he be entitled to the possession and beneficial use of the premises and of the rents and profits thereof during the period of re-

demption. We believe that the action of the trial court in turning the crops over to the purchaser at the sale is in direct violation of the letter and the purpose of chapter 132, Session Laws 1919.

By statute in North Dakota, § 6740, Comp. Laws 1913, it is expressly provided that the mortgagee is not entitled to the possession of the property unless expressly authorized by the terms of the mortgage or, if, after the execution thereof, the mortgagor agrees that the mortgagee may take possession. This statute appears without change in the codifications and revisions since 1877, where it is found as § 1733 of the Civil Code of Dakota Territory. Under § 6726, Comp. Laws 1913, the mortgage is declared to be a lien only. This statute also appears in its present form in the Civil Code of Dakota Territory of 1877 as § 1723. At the first session of the Territorial legislature, in 1862, the lien theory was adopted by necessary implication. See chapter 31, Session Laws 1862. It has, therefore, been the legislative policy of this jurisdiction at all times to recognize the lien theory, but the right of the mortgagor to possession of the property until foreclosure is perfected and the period of redemption has expired, has not always been recognized, as will be later shown. From the right of possession and the unqualified adoption of the lien theory under the statutes, follows, as a logical consequence, the right to the rents and profits, unless a legislative purpose to the contrary appear. In Whithed v. St. Anthony & D. Elevator Co. 9 N. D. 224, 50 L.R.A. 254, 51 Am. St. Rep. 562, 83 N. W. 238, this court held that the effect of § 7762, Comp. Laws 1913 (§ 353 Code Civ. Proc. 1877) was to give the purchaser at the foreclosure sale the right to the rents and profits during the period of redemption. See also Geo. B. Clifford & Co. v. Henry, 40 N. D. 604, 169 N. W. 508. In 1877, the Territorial legislature seems to have made a sort of a compromise between the mortgagor and the purchaser at the sale; the right to possession was given to the mortgagor, but the right to the rents and profits—usually following the right of possession and beneficial use—was expressly given to the purchaser. That was the law until 1919.

In McClory v. Ricks, 11 N. D. 38, 88 N. W. 1043, this court held that the mortgagee could, neither before nor after condition broken, maintain his possession of the premises though peaceably acquired, as against the mortgagor, unless the mortgagee had possession under an

express provision in the mortgage or pursuant to an agreement with the mortgagor, made subsequent to its execution. The court followed the literal import of § 6740, supra, and refused to adopt the conclusions reached by the courts of New York (Phyfe v. Riley, 15 Wend. 248, 30 Am. Dec. 55) and of Wisconsin (Gillett v. Eaton, 6 Wis. 30) wherein it had been held, under statutes which abolished the common law right of the mortgagee to maintain ejectment against the mortgagor before or after condition broken, that the mortgagee could maintain his possession, when lawfully acquired, against the mortgagor. In Phyfe v. Riley, supra, the New York court in effect held that the legislature, in taking from the mortgagee the right to maintain ejectment, intended merely to take away one of numerous remedies the mortgagee had; that prior to the statute the law was settled that in equity the mortgagee who had possession could maintain it by force of the mortgage: (Jackson ex dem. Minkler v. Minkler, 10 Johns. 480) and that the statute abolishing the remedy of ejectment had made no change as far as the application of this equitable rule was concerned. It seems that these courts, notwithstanding the radical departure from the common law theory of the mortgage that inhered in the adoption of the lien theory of equity, were to some extent influenced by the old notion that the mortgagee had the right of possession, but that the legislature had merely taken away the remedy to enforce it. It was then concluded that if the mortgagee "lawfully" or "peaceably" came into possession of the mortgaged premises, he became a "mortgagee in possession" and could successfully defend his possession against ejectment brought by the mortgagor. The statutes of New York and Wisconsin, referred to in the decisions cited above, upon their face deprive the mortgagee merely of a remedy—ejectment—which theretofore he had had against the mortgagor under the common law theory of the mortgage; unlike § 6740, supra, these statutes did not expressly declare that the mortgagor was entitled to the possession of the premises unless by express agreement he stipulated to the contrary, either in the mortgage or subsequent to its execution. With the common law theory of an absolute transfer of title for a background and a statute which the New York courts apparently held, in substance, affected merely the remedy, it was entirely logical that the further conclusion should be reached that equity could, in certain contingencies, appoint a receiver of the rents and profits and

control the disposition thereof. Hollenbeck v. Donnell, 94 N. Y. 342; Schreiber v. Carey, 48 Wis. 208, 4 N. W. 124. Just as equity had the power to let the foreclosure decree relate back to the time of the commencement of the action, so could it award to the mortgagee an equitable lien on the rents and profits. Lofsky v. Maujer, 3 Sandf. Ch. 69; Hollenbeck v. Donnell, supra.

Our court has never adopted this reasoning or accepted the results to which it logically leads. Our statutes, since 1877, have been different and expressly give the mortgagor the right of possession until foreclosure proceedings are complete; our statutes, since 1877, nowhere suggest that the mortgagee may, under any circumstances, acquire the right to a lien on the crops during the period of redemption, for the enforcing of which a receiver may be appointed. Section 7762, Comp. Laws 1913, until amended in 1919, expressly negatived the existence of such a right by giving the rents and profits to the purchaser at the sale—in effect continuing the lien of the mortgage until the expiration of the period of redemption. Geo. B. Clifford & Co. v. Henry, supra. That right is inferred from the general terms of § 7588, a remedial statute, which defines the powers of courts of equity to appoint receivers. What, it may be asked, was the purpose the legislature had in view in thus settling the right of possession of the premises in the mortgagor? Why was it not enough to say, as it did in § 6726, ff. Comp. Laws 1913, that the mortgage was merely a lien, independent possession? It would seem that the legislative purpose was to insure beyond doubt that the mortgagor would not, against his will, be ousted from the possession of the premises and that the accomplishment of this purpose necessarily excludes the notion that such ouster may be indirectly effected through the medium of a court of equity. That the legislature deemed the right to the rents and profits to follow as a necessary incident to the right of possession, is made clear by the course of legislation on the subject and is suggested by the fact that it was expressly provided that the purchaser at the foreclosure sale should be entitled to the rents and profits during the period of redemption, though in the event of redemption he was required to account therefor to the redemptioner. Section 7762. This statutory provision also dates back to 1877. The legislature by this statute settled a valuable and fundamental right as distinguished from a remedial right. This right has

remained fixed otherwise than in the mortgagee, for nearly sixty years, until 1919, when the legislative policy was completely reversed and this fundamental right, without condition or qualification, vested in the mortgagor.

The enactment of § 7762, supra, is profoundly indicative alike of the intention and the understanding of the legislature as to the law when it was enacted. It first appears as § 3537 of the Code of Civil Procedure of 1877. At the fourth session of the Territorial legislature, in 1864–65 (Chapter 15), it was expressly provided that the mortgagor was not entitled to the possession of the mortgaged premises after sale thereof and it was further provided that the court might decree the possession to the purchaser at the sale. From this right to the possession, the right to the rents and profits, as an incident, necessarily followed. By chapter 13, Session Laws 1875, the power to decree possession to the purchaser prior to expiration of the period of redemption was taken from the court. Hence, in 1877, when the lien theory of the mortgage was expressly adopted and the right of the mortgagor to possession expressly fixed (Comp. Laws 1913, §§ 6726, 6740) the legislature likewise felt it necessary to define unequivocally the rights of the parties to the rents and profits. Otherwise, as theretofore, such right would follow the possession and the fee and be in the mortgagor. Accordingly, § 353, Code of Civil Procedure, 1877 (Comp. Laws 1913, § 7762) was enacted, giving the rents and profits, during the period of redemption, to the purchaser at the sale.

From the foregoing legislative history, it appears that a court of equity in this jurisdiction has never had the power, under § 7588, Comp. Laws 1913, principally relied on by respondent, to appoint a receiver of the rents and profits or of the crops *during the period of redemption,* at the instance of the mortgagee, as such. The purchaser at the sale might be entitled to a receiver, but he would have no right to apply the rents and profits in payment of the taxes accruing after the sale. Nolte v. Morgan, 86 Kan. 823, 122 Pac. 886; Spencer v. Levering, 8 Minn. 461, Gil. 410. If he did so apply them, he would, nevertheless, have to account to the mortgagor if the latter redeemed. The purchaser, be he the mortgagee or some other person, is charged with knowledge of the statutory rights of the mortgagor; he also knows that taxes and interest may accumulate and become due during the

period of redemption. See Harvison v. Griffin, 32 N. D. 188, 155 N. W. 655. He takes the property with such burdens and in making his bid at the sale presumably considers them fully. Upon principle and under the statutes, the same rule, with respect to the disposition of the rents and profits during the period of redemption, should apply to interest and taxes due prior to the sale. The purchaser at the sale, whether he be the mortgagee or another, acquires the property, subject to the right to redeem, with the burden of such taxes or prior incumbrances; in the event of redemption, the purchaser must account for the rents and profits collected. This statute puts the rents and profits beyond the reach of a receiver in the interest of the mortgagee.

The result of these statutes cannot be avoided by the simple expedient of holding that failure to pay taxes and interest on prior incumbrances is a "species of waste." It would not be helpful to enter upon a lengthy discussion of what is technical "waste." We are convinced, from an examination of our statutes and a consideration of their history, that the legislature has used and understood the term "waste" in its common law and historical meaning of "spoil, or destruction in houses, gardens, trees and other corporeal hereditaments" (2 Bl. Com. 281); of "some definite physical injury" (Delano v. Smith, 206 Mass. 365, 30 L.R.A.(N.S.) 474, 92 N. E. 500); and that it was never considered by the legislature, in connection with the subject before us, that failure to pay taxes is one "of the acts or omissions usually named in the books as instances of waste" (Wade v. Mallory, 16 Hun, (N. Y.) 226). The remedy which the legislature in this jurisdiction has always provided suggests the nature of the acts or instances that, in its judgment, constitute waste. From the first session of the Territorial legislature, in 1862, § 577, Code of Civil Procedure, the aggrieved party has had the remedy of injunction. Comp. Laws 1913, §§ 7761, 8116. The impropriety of injunction as a remedy, were failure to pay taxes or interest a "species of waste," is, of course, manifest. If the right to seize the crops, as was done in this case, exist, it must be grounded on some principle other than the right of the mortgagee or purchaser to prevent waste. Certainly there is nothing in the legislation of this state to suggest that mere failure to pay a debt according to contract is waste, or any species thereof, even when coupled with insolvency or inadequate security.

In support of the contention that a court of equity, notwithstanding the statutes of this jurisdiction, has the power to appoint a receiver of the rents and profits, cases are cited from the States of Minnesota and New Jersey. In New Jersey, the courts, in the later decisions, at least, have recognized and enforced the right of a mortgagee to the appointment of a receiver of the rents and profits. It would seem, however, that the decisions from that state are not in point, in view of the mortgage theory there prevailing. There the rule of the common law is substantially in force: there the mortgagee, after breach of condition, has title in the mortgaged premises, possessing substantially all the incidents of the common law title and subject to be divested only by an equitable proceeding to redeem. In that jurisdiction the mortgagee is entitled to the rents and profits from the time he takes possession; appointing a receiver by a court of equity is equivalent to taking possession of the property under the rule at law and entitles the mortgagee to the rents and profits from such date, but not before. Stewart v. Fairchild, 91 N. J. Eq. 86, 108 Atl. 301.

The Minnesota cases relied on are based on Lowell v. Doe, 44 Minn. 144, 46 N. W. 297. In that case it appeared that the property covered by the mortgage—a hotel and appurtenances at Stillwater—had been abandoned by the mortgagor and that unquestionably deterioration and dilapidation of the security would result unless a receiver of the property were appointed. In that case, the Supreme Court held that it was proper to appoint a receiver of the rents and profits and that equity had jurisdiction to this end and that such power is not derived from and does not rest upon the common law principle of a legal estate in the mortgagee. Under the facts and the local statutes, we do not question the correctness of the decision. The court cites, in support of its conclusion, the following authorities: Hollenbeck v. Donnell, 94 N. Y. 342; Finch v. Houghton, 19 Wis. 150; Schreiber v. Carey, 48 Wis. 208, 4 N. W. 124; Pasco v. Gamble, 15 Fla. 562; and Hyman v. Kelly, 1 Nev. 179. We have examined these authorities and in all of them there was evidence which tended to show either fraud or bad faith on the part of the mortgagor or an actual or threatened physical deterioration of the property covered in the mortgage unless a receiver were appointed to conserve the same. Finch v. Houghton was decided by the Supreme Court of Wisconsin in 1865 under statutes wholly dis-

similar from our own and at a time when the courts had not wholly succeeded in freeing themselves from the influence of common law doctrines which had, however, been, to some extent, modified by statutory enactments. See Rogers v. Benton, 39 Minn. 39, 12 Am. St. Rep. 613, 38 N. W. 765, per Mitchell, Justice. Reference has been made to Schreiber v. Carey and more will be said about that case later. In Pasco v. Gamble, it appeared that the mortgagor had left the state and in Hyman v. Kelly, not only had actual waste, resulting in physical deterioration, been committed, but the mortgagors had threatened to destroy the property. It should also be noted that when Lowell v. Doe was decided there was a statute in force which provided that a receiver might be appointed before judgment when the property "or its rents and profits are in danger of being lost or materially injured or impaired." This statute, it seems, not only gave the court the express power to deal with the rents and profits in equity, but by implication recognized the right of the mortgagee, in certain contingencies, to the rents and profits before judgment. There was no statute like § 7762, Comp. Laws 1913, in force in Minnesota. Without giving any consideration to chapter 132, Session Laws 1919, it would seem that, in view of the essentially different statutory provisions, the holdings of the Supreme Court of Minnesota on this point, in Lowell v. Doe, 44 Minn. 144, 46 N. W. 297, and subsequent decisions, do not support the conclusion that under and notwithstanding our statutes, the mortgagee may become entitled to a receiver of the crops. When the mortgagee becomes a purchaser at the foreclosure sale, his status is entirely different and his rights, as such purchaser, have always been expressly defined in this jurisdiction.

The case of Schreiber v. Carey, 48 Wis. 208, 4 N. W. 124, deserves more extended consideration. It is one of the decisions relied on in Lowell v. Doe. In that case, one of the questions was whether equity could properly appoint a receiver of the rents and profits to protect the mortgagee's interest, either before or after judgment. The case was decided in 1880. The court referred to the case of Gillett v. Eaton, 6 Wis. 30, and subsequent decisions, holding "that if the mortgagee obtained peaceable possession of the mortgaged premises without foreclosure sale, after the condition of the mortgage had been broken, the mortgagor could not turn him out of such possession by an action of

ejectment, or by any other legal or equitable proceeding, until he had paid the amount due on the mortgage *or until the same had been paid by the application of rents and profits."* The court then bases its conclusion that a court of equity may appoint a receiver of the rents and profits upon the principle underlying the decisions in Gillett v. Eaton, and subsequent cases following that decision. The court points out that the mortgagee may defend his possession not on the theory that he acquires any legal title to the fee in the land mortgaged, but upon the equitable ground that, having a lien upon the property in his possession by contract with the owner of the fee "and his right to the payment of the amount of his lien having matured and remaining undischarged, it is equitable that the lien holder, being in possession of the property to which his lien attaches and out of which his debt is to be paid, should be permitted to hold such possession, and *apply the rents and profits which can be derived by such possession to the discharge of his debt, until the same shall be paid."* (Italics are ours.). Applying this principle in solution of the question before it in Schreiber v. Carey, the court then says:

"To sustain the position taken by the learned counsel for appellant, it would be necessary to overrule these cases: (Gillett v. Eaton, 6 Wis. 30) and if, as is urged, the mortgagor is entitled absolutely to the possession of the mortgaged premises irrespective of all equitable considerations until the foreclosure and sale, the law having secured to him the legal title until that event takes place, it would be impossible to sustain the right of the mortgagee to the possession, however acquired, until after foreclosure and sale. These decisions clearly recognize the equitable right of a mortgagor after condition broken to appropriate to the payment of his mortgage debt the rents and profits of the mortgaged estate by his own acts, and if he is permitted to do that under any circumstances, it would seem that a court of equity would have the power to do it for him in case where the circumstances clearly show that unless it be done he will necessarily lose some part of his mortgage debt."

The suggestion contained in the portions italicised was never the law in this state or in Dakota Territory.

In McClory v. Ricks, 11 N. D. 38, 88 N. W. 1043, our court had under consideration the very question discussed in Gillett v. Eaton and

in Schreiber v. Carey, supra.  Our court, as has heretofore been indicated, refused to adopt the conclusion of the New York and the Wisconsin Courts to the effect that a mortgagor could not maintain ejectment against the mortgagee who had acquired possession of the mortgaged premises otherwise than with the consent of the mortgagor.  Our court, in refusing to adopt the Wisconsin rule in construing § 6740, Comp. Laws, 1913, supra, says: "We think the language, as well as the logic of the statute demands such a construction by the courts as will secure to the mortgagor the right of possession as against the mortgagee and those claiming under him, and this at all times until title is acquired by a valid foreclosure; this of course being subject to the further right of the parties, either by an express stipulation inserted in the mortgage or by an oral or written agreement subsequently made, to agree that the mortgagee have possession before the subsequent foreclosure."

It is plain, therefore, that the very premise on which the conclusion of the Supreme Court of Wisconsin, in Schreiber v. Carey, to the effect that a court of equity may appoint a receiver of the rents and profits, is predicated, was rejected in its entirety by our court in McClory v. Ricks, and it would seem, if the reasoning in that case be carried to its logical conclusion, that the mortgagee, even as purchaser, in the absence of a statute giving him the right to the rents and profits during the period of redemption, would not be entitled thereto.  Under similar statutes such has been the conclusion reached in several jurisdictions. Guy v. Ide, 6 Cal. 99, 65 Am. Dec. 490; Chadbourn v. Henderson, 2 Baxt. 460; Hardin v. Hardin, 32 S. C. 599, 11 S. E. 102; Norfor v. Busby, 19 Wash. 450, 53 Pac. 715; Wagar v. Stone, 36 Mich. 364; Bank of Woodland v. Heron, 120 Cal. 614, 52 Pac. 1006; Locke v. Klunker, 123 Cal. 231, 55 Pac. 993.  We are convinced that the rule in these cases is correct and comports with the liberal spirit of our mortgage laws.

From the foregoing considerations, it seems that the trial court, without regard to the provisions of chapter 132, Session Laws 1919, had no power to transfer to the purchaser the possession of the property covered by the mortgage, at the instance of the purchaser at the sale, or to appoint a receiver of the crops thereof during the period of redemption, at the instance of the mortgagor, as such.  The lien theory of a

mortgage has been recognized by statute in this jurisdiction from the earliest territorial days to the present time, and not by the grace or through the interposition of courts of equity; we have at all times, since 1862, had statutes by implication or expressly declaring that the mortgage is a lien and, since 1875, unequivocally and without conditions or qualifications fixing the right of possession to the mortgaged premises in the mortgagor until foreclosure proceedings are completed; our legislature expressly recognized that from the statutory provisions and the right to possession flow as an incident the right to the rents and profits thereof and enacted a statute providing that the purchaser at the mortgage foreclosure sale should be entitled to the rents and profits during the period; but that right is exclusive in such purchaser and the mortgagee, as such, never had any claim thereto. Where a statute expressly takes from the mortgagee not merely a remedy like ejectment, as was the case in New York and Wisconsin, but the substantive right to possession of the premises, we are unable to conclude, upon any established rules of statutory construction, that the legislature did not intend that all consequences naturally resulting from the enjoyment of that substantive right should not follow. See Crippen v. Morrison, 13 Mich. 35. We do not believe that that which the legislature has expressly and unconditionally said shall belong, as a matter of right, to the mortgagor may be indirectly taken from him by a court of equity in the exercise of its implied prerogatives. Equity follows the law, not only in its letter, but its spirit.

The theory seems to be that chapter 132, Session Laws of 1919, amounts to nothing more than a repeal of the act (§ 7762) that gave the rents and profits to the purchaser at the foreclosure sale and that therefore courts of equity, under § 7588, have the power to appoint receivers of the rents and profits, or the crops at the instance of the mortgagee or of the purchaser. It seems to us that no clear distinction is observed between the mortgagee, as such, and the purchaser at the sale. Our statutes have always recognized a broad difference. We think it is clear that a court of equity never had the power in this jurisdiction to appoint a receiver of the rents and profits, accruing during the period of redemption, at the instance of the mortgagee. Some consideration of the history of § 7588 and of other statutes involved in this litigation will, we believe, further make evident the fallacy of this con-

tention.    Section 7588 was adopted as a part of the Code of Civil Procedure in 1862, as § 250.    It has been brought through several revisions and codifications down to that of 1913 without substantial or pertinent changes.    It became § 219 of the Code of Civil Procedure in 1877.    Section 6740, which provides that the mortgagee is not entitled to the possession, is substantially § 1435 of the original Field Code. That section appears as 1733 in the Civil Code of Dakota Territory of 1877.    The Code of Civil Procedure was adopted at the first session of the Territorial legislature in 1862, while the Civil Code was not adopted until at the fifth session of the Territorial legislature, in 1866. It thus appears that § 6740, Comp. Laws 1913, was adopted later than § 7588.    It would seem, therefore, that the enactment of § 6740, giving the mortgagor the absolute right to the possession of the mortgaged premises, without any qualification or limitation as to the incidents of possession, by necessary implication, amended or modified § 7588, supra, if that section could at that time have been properly construed to give a court of equity the power to appoint a receiver of the rents and profits. Substantially an identical situation was before the Supreme Court of Washington in Norfor v. Busby, 19 Wash. 450, 53 Pac. 715, supra, where it was held that the enactment of a statute, giving the mortgagor the right to the possession of the property, by implication repealed a statute, earlier enacted, giving courts of equity the power to appoint receivers of rents and profits in foreclosure proceedings.

That which was to some extent at least left to inference and deduction, the legislature placed beyond doubt by the enactment of chapter 132, Session Laws 1919.    Chapter 132, Session Laws 1919, which is an amendment of § 7762, Comp. Laws 1913, reads as follows:

"The debtor, under an execution or foreclosure sale of his property, shall be entitled to the possession, rents, use and benefit of the property sold from the date of such sale until the expiration of the period of redemption."

We believe that the legislature intended to settle beyond cavil the question of the right of the mortgagor to the use and benefit of the property until his title to the premises was divested by foreclosure and expiration of the period of redemption.    It must be noted that the legislature here is dealing with a fundamental, as distinguished from a remedial, right.    It must also be noted that there is, in the enactment

of this statute, a complete reversal of legislative policy.   Prior thereto, under § 7762, Comp. Laws 1913, the purchaser was entitled to receive from the tenant in possession the  rents of the property purchased or the value of the use and occupation thereof.   This statutory enactment, prior to the amendment, gave the purchaser a valuable right.   See Crippen v. Morrison, supra.   The rule of the statute was contrary to the current of authority in this country in the absence of a similar statutory provision.   It was generally held, at least in those jurisdictions where the lien theory of the mortgage prevailed, that the mortgagor was entitled to the rents and profits and the beneficial use of the property until his title was divested in perfected foreclosure proceedings.   Such, however, was not the legislative policy of this jurisdiction. The legislature was not satisfied to leave the question as to the rights to the rents and profits to be solved by reference to common law or general rules; it affirmatively, in language that cannot be misunderstood, says not only that the mortgagor shall be entitled to the possession and the rents, but that he shall be entitled to the *use and benefit of the property*" during the period of redemption.   There are no conditions or qualifications attached.   It is difficult without resorting to technical reasoning, to see how the literal import of the language of the statute can be avoided.   There can be no question about the legislative purpose.   It was to insure the mortgagor, for himself and his family, the beneficial use of the property during the period of redemption.   We have no power to read conditions, exceptions, or qualifications into this statute; or to permit that to be done by indirection which the legislature has said shall not be directly accomplished.

It is an elementary rule in the interpretation of statutes that the language used should be interpreted in its ordinary meaning, in the absence of an intention to the contrary clearly expressed.   It is true that it is the duty of courts, in construing statutory provisions, to presume that the legislature knew the law and understood the meaning of the words used.   We owe this duty to a co-ordinate branch of the government, charged with a responsibility no less definite and no less important than our own.   It is, however, in our judgment, a perversion of that rule to resort to technical reasoning, to more or less antiquated rules of the common law, or of ancient equity, which never prevailed in this jurisdiction, in order to give a construction to statutes, in the

light of such rules, contrary to the letter of the law, and almost certainly contrary to the purpose the lawmakers desired to accomplish.

Section 7588, supra, provides in what cases receivers may be appointed. Subdivision 2 thereof reads as follows:

"In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property when it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the conditions of the mortgage have not been performed and that the property is probably insufficient to discharge the mortgage debt."

The court found that the defendant was insolvent, that the value of the property covered by the lien was insufficient to discharge the mortgage debt, and that in several particulars the conditions of the mortgage had not been performed by the defendants. Under identical statutes the Supreme Court of South Dakota held that the court had the authority to appoint a receiver of all rents and profits in a foreclosure proceeding, even though the mortgagor was not insolvent. Roberts v. Parker, 14 S. D. 322, 85 N. W. 591; Sherman v. Harrisburg Loan Co. 46 S. D. 497, 194 N. W. 652.

The judgment directs the receiver to seize the crops of 1923 "growing or *now harvested*" and apply them to the payment of interest on prior encumbrances and of unpaid taxes for the years 1920, 1921, and 1922, already paid by plaintiff, up to $500, which amount the court finds is the annual rental value of the land. The mortgage does not expressly authorize the appointment of a receiver or cover the crop to be grown on the premises. "Growing crops are personal property when severed from the land;" Jones, Mortg. § 697; Craig v. Burns, 65 Mont. 550, 212 Pac. 856; the portion of the crop that had been severed when the judgment was entered on August 14, 1923, belonged to the mortgagors and their right to it could not be questioned; nor could such portion be seized by the receiver and subjected to the satisfaction of the lien of the mortgage any more than any other personal property not covered by a mortgage lien. Craig v. Burns, supra: The severed crops had the status of "any other chattel not mortgaged, and the mortgagee cannot take them in a proceeding to enforce the mortgage." Cowdery v. London & S. F. Bank, 139 Cal. 298, 96 Am. St. Rep. 115, 73 Pac. 200. See also Locke v. Klunker, 123 Cal. 235, 55 Pac. 993;

Golden Valley Land & Cattle Co. v. Johnstone, 21 N. D. 101, 110, 111, 128 N. W. 691, Ann. Cas. 1913B, 631. The court was, therefore, without power, under § 7588, supra, to direct the receiver to seize crops that had already been severed and which had acquired the same status as other personal property belonging to the mortgagor.

The authorities recognize an important distinction between the crops and the rents and profits of mortgaged premises. The crops contain the labor of the farmer who has planted and cultivated the same; the rents and profits do not. In the decree the trial court gives the mortgagee the value of the use of the land and the value of the labor of the farmers who produced the crop. No rule of law or equity supports such a conclusion. See Aultman & T. Co. v. O'Dowd, 73 Minn. 58, 72 Am. St. Rep. 603, 75 N. W. 756, and Golden Valley Land & Cattle Co. v. Johnstone, 21 N. D. 101, 109, 128 N. W. 691, Ann. Cas. 1913B, 631.

The court makes no findings or conclusions as to what portion of the crops had not been severed, if any, when the decree was entered. There is no finding on which a judgment, under any of the authorities, can be supported directing a receiver to take possession of the crops raised during the year 1923. In view of the absence of findings upon this important point, a discussion as to when, if ever, a receiver, under our statutes, may be appointed to collect the rents and profits of agricultural land prior to the foreclosure sale, where there is no provision in the mortgage for the appointment of a receiver, would be out of place. See, however, Boston & S. Realty Co. v. Franc Invest. Co. 112 Wash. 113, 191 Pac. 827; First Nat. Bank v. Cranmer, 42 S. D. 404, 175 N. W. 881. In the latter case the court say: "Appellants contend, and correctly, that the rents and profits of the mortgaged premises accruing *prior to issuance of the deed on foreclosure* belonged to them, and that the trial court was without power to authorize the receiver to use any part thereof to pay the mortgage indebtedness. . . . But there is nothing in § 2475 [our § 7588, supra] supra, that by any fair inference can be held to authorize the court to take hold of such rentals or profits and pay same over to the mortgagee." (Italics are ours.) We express no opinion upon this question.

There is no finding that any crops remain unsevered, or what portion of the crops, if any, had been severed when the decree was entered.

There is, therefore, no finding to support a judgment directing the receiver to seize the crops for the purpose of delivering the same or of applying the proceeds of the sale thereof to payment of interest on prior incumbrances or of taxes already paid by plaintiff. The evidence is not here. The only question to be determined on this appeal is whether the findings support the conclusions and the judgment entered. Christ v. Johnstone, 25 N. D. 6, 140 N. W. 678. The findings are insufficient to support a judgment that the plaintiff is entitled to a receiver of the crops raised in 1923, whether severed or not.

The judgment is reversed insofar as it appoints a receiver and directs him to seize the crops raised in 1923, or collect rents and profits after the sale. As thus modified, the judgment, decreeing a foreclosure of the mortgage, is affirmed.

NUESSLE, CHRISTIANSON, and BIRDZELL, JJ., concur.

BRONSON, Ch. J., dissents.