OLAF OLSON, Eva M. Olson, and Edward B. Olson, Appellants, v. UNION CENTRAL LIFE INSURANCE COMPANY, a Corporation, Eaton Loan Agency, a Corporation, and First State Bank of Kulm, a Corporation.
UNION CENTRAL LIFE INSURANCE COMPANY, a Corporation, Respondent.

(235 N. W. 722.)

Opinion filed March 21, 1931. Rehearing denied April 20, 1931.

*Buck & Buck,* for appellants.

*Holt, Frame & Nilles,* for respondents.

NUESSLE, J. This appeal is an aftermath of Olson v. Union Cent. L. Ins. Co. 58 N. D. 176, 225 N. W. 124 and Olson v. Union Cent. L. Ins. Co. 58 N. D. 899, 228 N. W. 223. The salient facts in the instant case may be stated briefly as follows: Olson owned a farm. On October 29, 1921, he mortgaged it to the Union Central Life Insurance Company. He also executed a second mortgage to the Eaton Loan Agency. The first mortgage was in the usual form and contained, in addition, a clause reading as follows:

"In case suit is brought to foreclose this mortgage, the plaintiff shall be entitled to the immediate appointment of a receiver to take charge of the property and apply the net income thereof on the debt secured hereby."

Olson defaulted in his payments. The second mortgage was foreclosed by advertisement and the property was sold. A sheriff's certificate of sale was issued to the purchaser, the Eaton Loan Agency. Thereafter this certificate was assigned and transferred to the Union Central Life Insurance Company, and pursuant thereto a sheriff's deed was issued to the assignee on November 10, 1925. In September, 1925, Olson began an action to set the sale aside. In June, 1927, judgment was entered adverse to Olson and in favor of the insurance company, adjudging the latter to be the owner of the real property, quieting

title in it as against Olson, and awarding it the possession thereof. Olson asked for a stay of execution to enable him to perfect an appeal, and a stay was granted. Olson perfected his appeal. This court reversed the judgment of the district court and held that the second mortgage was void; that the foreclosure thereof was ineffective; and that Olson was the owner of the property subject to the first mortgage. See Olson v. Union Cent. L. Ins. Co. 58 N. D. 176, 225 N. W. 124.

In the meantime, and during the years 1924, 1925, 1926 and 1927, Olson continued in possession of the premises and had the use and occupation of the same. He planted the land to crop in 1927. When in August, 1927, he perfected his appeal, this crop was about to mature. On August 22, 1927, the district court, on application of the insurance company theretofore made, entered an order appointing a receiver. This order designated the receiver and provided he should enter into possession of the premises and conserve the crop, and that after paying the charges entailed in so doing he should hold such crop subject to the further order of the court. The receiver qualified pursuant to the requirements of the order and harvested, threshed, and conserved the crop in question. Olson perfected an appeal from the order. The case was set for argument at the October, 1929, term of this court and an opinion therein adverse to Olson was handed down on December 24, 1929. See Olson v. Union Cent. L. Ins. Co. 58 N. D. 899, 228 N. W. 223. Pursuant to an order of the district court the receiver sold the crop in question and deposited the proceeds thereof, $744.17, with the clerk of court of LaMoure county, who since has had and now has possession thereof.

On August 2, 1926, the insurance company began an action in the United States District Court for the District of North Dakota, to foreclose the first mortgage. Judgment was entered in favor of the insurance company. The property was sold pursuant thereto, and on July 7, 1928, a deficiency judgment for $1,000 was entered against Olson.

On February 20, 1930, the insurance company applied to the district court of LaMoure county for an order directing the clerk to pay it the moneys deposited with him by the receiver. In its application the company set up the receivership in the district court of LaMoure county; that the receiver had deposited with the clerk of court the sum of $744.17, the proceeds of the Olson crop; that said sum was being

held subject to the further order of the court; that the company had foreclosed its first mortgage in the United States District Court; that it had obtained a deficiency judgment against Olson for the sum of $1,000; that it claimed and had a lien on the proceeds of said crop so deposited by virtue of the clause in its mortgage, heretofore quoted; and prayed that the court direct the clerk to pay it the moneys so deposited with him, subject to the charges of the receiver. Olson resisted this application. The court granted the same and entered an order accordingly. This appeal is from the order so entered.

Olson was a mortgagor in possession. In the absence of a contract to the contrary he was entitled to the possession, rents, use and benefit of the mortgaged premises until the foreclosure of the mortgage and the expiration of the period of redemption. See § 7762, Comp. Laws 1913, as amended by chapter 132, Sess. Laws 1919. Assuming (without deciding) that the provision in the mortgage "that in case suit is brought to foreclose this mortgage the plaintiff shall be entitled to the immediate appointment of a receiver to take charge of the property and apply the net income thereof on the debt secured hereby," is valid and effective, the sole question on this appeal is as to whether by virtue of this provision the insurance company is entitled, under the circumstances here disclosed, to the proceeds of the crop raised by Olson on the mortgaged premises in the year 1927.

In the first place, we think that the term "net income" as used in the mortgage provision must be considered as synonymous with "rents and profits." Certainly it cannot be held to mean the crops, as the defendant in support of its application seems to contend. Under the statute, § 6707, Comp. Laws 1913,

"A lien by contract upon crops shall attach only to the crop next maturing after the delivery of such contract, except in the case of liens by contract to secure the purchase price, or rental, of the land upon which such crops are to be grown."

Accordingly, in no event, could the company be entitled to the full amount of the proceeds of the crop in the receiver's hands. There is a distinction between the crops and the rents and profits of mortgaged premises. The crops contain the labor of the farmer who has planted and cultivated the same. The rents and profits do not. See Farm

Mortg. Loan Co. v. Pettet, 51 N. D. 491, 36 A.L.R. 598, 200 N. W. 497.

The receiver was appointed to conserve the crop and not the rents and profits. The district court had adjudged the sheriff's deed good as against Olson and that Olson had no title to the land. So the crop planted by Olson thereon belonged, subject to the outcome of the appeal, to the insurance company, the grantee in the sheriff's deed. See Hendricks v. Stewart, 53 N. D. 513, 206 N. W. 790. But if on the appeal Olson should prevail, then the crop was his. Section 7762, Comp. Laws 1913, as amended; Farm Mortg. Loan Co. v. Pettet, 51 N. D. 491, 36 A.L.R. 598, 200 N. W. 497, supra. The crop was mature. Olson was about to harvest it. Whether the crop belonged to the insurance company or to Olson awaited the result of the appeal. Olson was insolvent. The undertaking on appeal did not cover the crop. So the receiver was appointed. See Olson v. Union Cent. L. Ins. Co. 58 N. D. 899, 228 N. W. 223. The issue was between the insurance company claiming the crop as the owner of the realty under its sheriff's deed and Olson claiming it as mortgagor in possession. The insurance company asserted no claim as mortgagee under the provisions of its first mortgage.

Under the terms of the clause in the mortgage here involved, the insurance company upon bringing suit to foreclose the mortgage was entitled to the appointment of a receiver to take charge of the property and apply the net income thereof on the mortgage debt. Foreclosure was begun on August 2, 1926. Under the terms of this clause at that moment the insurance company could exercise this right. But it did not do so. It was content to proceed with the foreclosure without taking steps to secure the net income from the property. The rule is that a mortgagee, though entitled to the appointment of a receiver to collect the rents and profits in case of a default, acquires no rights to such rents and profits until he takes some action to assert his rights. See Sullivan v. Rosson, 223 N. Y. 217, 119 N. E. 405, 4 A.L.R. 1400, and cases cited in note; Beindorf v. Thorpe, 126 Okla. 157, 259 Pac. 242, 55 A.L.R. 1014, and cases cited in note; Sage v. Memphis & L. R. R. Co. 125 U. S. 361, 31 L. ed. 694, 8 S. Ct. 887; Freedman's Sav. & T. Co. v. Shepherd, 127 U. S. 494, 32 L. ed. 163, 8 S. Ct. 1250;

Grether v. Nick, 193 Wis. 503, 55 A.L.R. 525, 213 N. W. 304, 215 N. W. 571.

On this appeal the defendant insists that though this rule is applicable as between the mortgagee and third parties, it does not apply as between the mortgagee and the mortgagor. It seems to us, however, that the provision on which the defendant relies does no more than give to the mortgagee the right to collect the rents and profits if and when the default having occurred entitling it to do so, it shall claim them, and that until this claim is asserted there is no lien. See Flanagan v. Fuller, 79 Mont. 590, 257 Pac. 475. And clearly this is the effect of Sage v. Memphis & L. R. R. Co. 125 U. S. 361, 31 L. ed. 694, 8 S. Ct. 887, supra. Mr. Justice Harlan there said:

"Had the receiver never been appointed, and had the Railroad Company operated the property just as the receiver did, producing the same amount of net earnings that were in the hands of the receiver, at the time of his discharge, would the trustees in the mortgage . . . have been entitled to demand that such earnings be paid over to them? Clearly not. 'It is well settled,' this court said in Dow v. Memphis & L. R. Co. 124 U. S. 652, 31 L. ed. 565, 8 S. Ct. 673, 'that the mortgagor of a railroad, even though the mortgage covers income, cannot be required to account to the mortgagee for earnings, while the property remains in his possession, until a demand has been made on him therefor, or for a surrender of the possession under the provisions of the mortgage. That is the effect of what was decided by this court in Galveston, H. & H. R. Co. v. Cowdrey, 11 Wall. 459, 483, 20 L. ed. 199, 207.' See also Gilman v. Illinois & M. Teleg. Co. 91 U. S. 603, 23 L. ed. 405; American Bridge Co. v. Heidelbach, 94 U. S. 798, 24 L. ed. 144; Kountze v. Omaha Hotel Co. 107 U. S. 378, 27 L. ed. 609, 2 S. Ct. 911; Teal v. Walker, 111 U. S. 242, 250, 28 L. ed. 415, 418, 4 S. Ct. 420."

The defendant cites and relies upon the case of Seibert v. Minneapolis & St. L. R. Co. 52 Minn. 246, 53 N. W. 1151, as sustaining its contention that since the property was already in the hands of a receiver it would have been futile to procure the appointment of a receiver in the foreclosure action in another court or otherwise attempt to assert its claim, and that therefore defendant was not required in order to make its lien effective to have a receiver appointed or make demand

for the income of the property. We think, however, that the Seibert case does not sustain this contention, but is, in fact, an authority to the contrary. Chief Justice Gilfillan in that case said:

"But suppose the case of an action to foreclose by a junior mortgagee, and the appointment, upon his application, of a receiver to take possession of the property and receive the income for his benefit only, while there are senior mortgagees having the right to take and hold possession and receive such income; we can easily conceive that, if they acquiesce in the possession of the property and the receipt of the income by the receiver for purposes other than their mortgages, making no move towards asserting their claims, they would have no right to any part of the income, any more than had they permitted the mortgagor to remain in possession, and to receive and disburse it for its general purposes." Citing Sage v. Memphis & L. R. R. Co. 125 U. S. 361, 31 L. ed. 694, 8 S. Ct. 887, supra.

To the same effect is Atlantic Trust Co. v. Dana, 62 C. C. A. 657, 128 Fed. 209, also cited by the defendant.

It may be that the insurance company was not required to procure the appointment of a receiver in order to make its mortgage effective. But it was required to assert its claim in some manner, and until it did so it had no lien on or right to the net income of the mortgaged property. Even though its application to the district court of LaMoure County constituted a sufficient assertion of its claim under the mortgage provision, yet it cannot avail the company here. Such an assertion could only operate to fix the mortgage charge on the net income thereafter accruing. The funds in the hands of the clerk of the LaMoure County court, which the company applied to have distributed to it, resulted from the sale of crops harvested and sold long prior to the time of the application. It has no lien on those funds or on the crops from which they resulted.

Order reversed.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.