[File No. 6980]

FRED REITMAN, Appellant, v. ATHALIE WHITAKER et al., C. G. GROSS, Respondent.

(23 NW2d 393)

Opinion filed April 15, 1946.   Rehearing denied June 15, 1946

*Hyland & Foster,* for appellant.
*John E. Williams* and *Conmy & Conmy,* for respondent.

CHRISTIANSON, Ch. J.   This is an action to quiet title to a tract of land in McLean County in this state.   After the commencement of the action the respondent, C. G. Gross, was added as a party defendant.   In his answer the defendant Gross denied the allegations of the complaint and alleged that on January 28, 1944 he leased the tract of land in question from one George Baalson (one of the defendants named in the title of the action), acting for and on behalf of himself, Joe Baalson and Athalie Whitaker and Ronald Whitaker, the then owners of said real estate; that said lease contained an option to purchase; "that said real estate was owned jointly by Athalie Whitaker, Ronald Whitaker, George Baalson and Joe Baalson, as heirs of Henrietta Whitaker; that the estate of Henrietta Whitaker was probated in the County Court of Sheridan County, North Dakota, and in the Final Decree of Distribution in the said estate, Joe Baalson and George Baalson were conveyed an undivided 30/38ths interest in said real estate and that Athalie Whitaker and Ronald Whitaker were conveyed an undivided 8/38ths interest.

That on the 29th day of February, 1944, Joe Baalson conveyed his interest in the said real estate to the Defendant, Christ G. Gross by a Quit Claim Deed, which said Quit Claim Deed was recorded in the office of the Register of Deeds in and for McLean County, North Dakota, on the 13th day of July, 1944 and duly recorded in Book A–11 of Deeds at Page 204. That on the 31st day of May, 1944, George Baalson conveyed

by Quit Claim Deed his interest in the said real estate to the Defendant, Christ G. Gross which said Quit Claim Deed was recorded in the office of the Register of Deeds in and for McLean County, North Dakota on the 13th day of July, 1944, and duly recorded in Book A–11 at page 205; that the Defendant by reason of such conveyances is the owner of an undivided 30/38ths interest in the said real estate."

The defendant, Gross prayed judgment that the defendant, Gross be adjudged and decreed to be the owner of an undivided 30/38ths interest in and to said real estate, and that his title to such interest be quieted as against the claims of the plaintiff Reitman, and that said Reitman be forever debarred and enjoined from further asserting any right, title, interest or claim in and to said premises adverse to defendant, Gross.

The action was tried upon the issues so framed by the pleadings and resulted in a judgment in favor of the defendant, C. G. Gross, and against the plaintiff, Reitman, adjudging said Gross to be the owner in fee of an undivided 30/38ths interest in and to the land in controversy, and further adjudging that the defendant, Gross pay to the clerk of said court, to be delivered to said Reitman, the sum of $545.05, being the amount paid by the plaintiff, Reitman for taxes on said land, together with interest on such sum from the date Reitman made payment. The plaintiff has appealed from the judgment and demanded a trial anew in this Court.

According to stipulations upon the trial, the land in controversy originally belonged to one Joe F. Whitaker, and his wife, Henrietta Whitaker became the owner by a deed from her husband, Joe F. Whitaker, which was recorded in the office of the Register of Deeds of McLean County. It was further stipulated "that Henrietta Whitaker died and that her estate was probated in the County Court of Sheridan County, and a Final Decree of Distribution was made by the said Court on the 14th day of April, 1937 and a certified copy of such final decree was recorded in the office of the Register of Deeds in and for McLean County, North Dakota, on April 23d, 1937 at 1 o'clock P. M."; and that such decree of distribution vested the ownership and title to

the tract of land in controversy as follows: in George Baalson, an undivided 15/38ths interest; in Joe Baalson, an undivided 15/38ths interest; in Athalie Whitaker, an undivided 4/38ths interest; and in Ronald Whitaker, an undivided 4/38ths interest.

The evidence shows that the defendant, Gross owned a farm immediately adjacent to the land in controversy and that Gross has rented and farmed the land in controversy for approximately 25 years. He rented it first from Joe F. Whitaker, the then owner. After the land became the property of Henrietta Whitaker, Gross continued to rent the land from her. After she died Gross rented the land from George Baalson, the administrator of her estate. George Baalson left North Dakota and went to Idaho. The evidence does not show at what time. The defendant, Gross continued to farm the land. Taxes against the land were not paid for the years 1936 to 1941, both inclusive, and the land was sold to the county for nonpayment of taxes. The defendant, Gross testified that in the spring of 1942 George Baalson wrote him a letter to the effect that he was to be called into the army and expected to be drafted any day and that he made some suggestion that the defendant, Gross take a 5 or 10 year lease; that he (Gross) did not hear anything further from George Baalson; that in the fall of 1942 he wrote him two letters and receiving no answer supposed that he had been called into the army; that he (Gross) disposed of the 1942 crop and put the check received for the proceeds of the landlord's share in a safety deposit box in a bank at Underwood.

Gross further testified that in the fall of 1943 he wrote the postmaster at the post office in Idaho from whence the letters from George Baalson had been sent, in an endeavor to locate George Baalson; that in reply to the letter which Gross sent the postmaster for delivery to George Baalson, and which apparently the postmaster had succeeded in delivering, George Baalson answered as follows:

"Marsing, Idaho,
Sept. 20, 1943.

Mr. C. G. Gross,
Underwood, N. Dak.

Dear Christ:—

The postmaster here at Marsing handed me your letter this morning.

The reason I have not written you is because the land has passed out of our hands. As the taxes have not been paid on it for some time I received notice from the County Auditor that the place would be sold for taxes. Naturally I concluded that, such being the case, we would have nothing further to do with it and thinking you would be informed that we no longer had anything to say in the matter, I didn't write you.

It is now going on three years since I have heard from my brother, Joe. By any chance, have you heard anything? Anyway he never thought there was any use keeping it, all he wanted was his money. I can't see any use of my trying to keep up the taxes myself, so decided to let it go.

There you are. That is the reason for my not writing. Hope it is enough to pay the County what we owe in back taxes. If there is send it direct to the County Auditor. . . .

Sincerely yours
George Baalson"

Gross testified that upon receipt of the letter from George Baalson he went to see the banker at Underwood about the taxes against the land,—"to find out what was best to do about it"; that the banker said "Why don't you go and pay the taxes"; that thereupon Gross showed him the check for the proceeds of the landlord's share of the 1942 crop and that the banker said that nobody could cash that check except George Baalson and further said "Why don't you pay the taxes out of your own money?" Gross testified that at this time the 1943 crop had not been threshed and after the conference with the banker he went to Washburn, the county seat, with the intention of paying the taxes; that when he came to the County Auditor's office, the

Deputy County Auditor (Weber) advised him that it would be a good idea to take an assignment of the tax sale certificates held by the county rather than to pay the taxes outright as then he (Gross) "would be safe and when George pays you back you can always fix things over"; that thereupon Gross paid the amount due the county for the tax sale certificates, using his own moneys for that purpose; and that thereupon the tax certificates were assigned to him. He testified that at the time he intended to make a trip out West that winter and intended to stop and see George Baalson and make an adjustment of their matters. The County Auditor thereafter issued notices of expiration of time of redemption upon the tax certificates which had been assigned to Gross and caused such notices to be published in a newspaper in the county; such notices stated that the redemption period would expire January 15, 1944.

The plaintiff, Reitman testified that in the "fall of 1943" he endeavored to purchase the land in controversy from the county and found that this could not be done. Apparently, the plaintiff, Reitman read the notices of expiration of the period of redemption which were being published, and thereupon wrote George Baalson at Marsing, Idaho. The record does not definitely show whether he write one letter or more than one letter. The exact contents of the letter or letters do not appear as neither the original nor copy of any letter was introduced in evidence. When asked to state the contents of the letter to Baalson, Reitman said "It was making him an offer on this property. I made him an offer on it. I gave him $1000.00 and the taxes. I was going to take up the taxes. The land had been sold for taxes." Reitman testified that before he received an answer to his letter he sent a telegram to George Baalson "through a dealer at Marsing." Neither the original nor copy of the telegram was produced or introduced in evidence. When asked to state the contents of the telegram, Reitman stated "In the telegram I asked him to answer by offer. I told him that the time for redemption was about up and if he wanted to take up my offer to send me that telegram." He further testified that thereafter he received the following telegram:

"POSTAL TELEGRAPH
UNDERWOOD N D. JAN 15, 1944.

26
TJKC. MARSING IDAHO 358PM. 14.
FRED REITMAN,
UNDERWOOD N DAK.

IF YOU DESIRE PURCHASE OF PROPERTY STATED IN YOUR LETTER GO AHEAD AND PAY TAXES USE THIS TELEGRAM OF MY AUTHORIZATION WRITE ME DETAILS AT ONCE.

GEORGE BAALSON."

Reitman testified that after receipt of the telegram he at once went to the County Auditor's office and on January 15, 1944 paid the amount due on the tax sale certificates. There was also introduced in evidence as part of the plaintiff's case in chief the following letter from George Baalson:

"Marsing, Idaho,
Jan. 13, 1944.

Mr. Fred Reitman,
Underwood, N. Dak.

Dear Sir:

Received your letter a day or so ago.

It is impossible for me to do anything about the land you write about as it is held jointly by my brother and myself. I don't know where he is and further more it is impossible to come back there as you suggest.

I have given up trying to hang on to the property as it has always been a lot of trouble to take care of it.

Sorry I can't help you, but it is now out of my hands.

Yours truly,
George Baalson"

Reitman testified that after receiving this letter he checked the records in the office of the Register of Deeds for the purpose of ascertaining what interest George Baalson owned in the land and found that he owned only a 15/38ths interest. He testified further that his offer was for the whole fee title to the land;

that he did not make any offer to purchase George Baalson's interest in the land and that he did not want to purchase only the 15/38ths owned by George Baalson.

There also was introduced in evidence by the plaintiff the following letter from George Baalson:

"Marsing, Idaho,
Jan. 24, 1944.

Mr. Fred Reitman
Underwood, N. Dak.

Dear Sir:

In regards to the property on which you paid the taxes.

Before it will be possible to send you the paper on the place I will have to contact my brother to get his signature. Not knowing just where he is it will possibly take a little time but I'll make every effort to do so as soon as I can.

You state in your letter that I am the administrator of the estate. There must be some mistake as I was released some time ago as administrator. So now it will be necessary to get the signatures of the heirs themselves before the property can change hands.

I'll let you know as soon as I contact my brother.

Thanking you for your help and interest, I remain

Sincerely yours,
George Baalson"

Plaintiff testified that during the first week in February, 1944 he went to Idaho and there saw George Baalson and had a conversation with him regarding their transactions. When asked to state the conversation then had between the plaintiff and Baalson, the plaintiff answered:

"Well, he took me in to the lawyers office there, and he didn't want to settle. I asked him and he said he didn't want in any way to put himself liable. That was about all, I wanted to settle with him, if I could."

Plaintiff testified further that George Baalson did not know the whereabouts of his brother, Joe Baalson, but that he told plaintiff where the two persons, who each owned a 4/38ths in-

terest in the land, were living. He testified further that he made no effort to locate either Joe Baalson or the two persons who each owned a 4/38ths interest.

The defendant, Gross testified that after he received the remittance from the County Auditor of the moneys that had been paid by the plaintiff in redemption of the tax sale certificates, he communicated with George Baalson and told him that he was coming West and would stop and see him; that Gross went to Idaho, saw George Baalson, and at that time made arrangements with him to lease the land with an option to buy; that thereupon such written lease was executed on January 28, 1944; that at this time George Baalson said he did not know the whereabouts of his brother Joe; that the defendant, Gross paid over to George Baalson the landlord's share of the proceeds of the crops for 1942 and 1943; that he also paid to George Baalson the amount which he had received from the County Auditor for the redemption made by the plaintiff; that later he received a quitclaim deed from George Baalson and also a quit claim deed from Joe Baalson; and that he paid $1500.00 as consideration for these two deeds.

The trial court concluded that the evidence adduced in this case failed to establish that the plaintiff was the owner of the land; and that such evidence did establish that the defendant, C. G. Gross, was the owner of an undivided 30/38ths interest in fee in said land.

The only question presented and argued on this appeal is whether the plaintiff has established ownership of the land. It is contended on behalf of the plaintiff that he purchased the land from George Baalson and became and is the fee owner. The contention is predicated upon the proposition that the telegram of January 15, 1944, which is set forth above, constituted an acceptance of plaintiff's offer to purchase; that as a result of such acceptance, a contract came into being under which the plaintiff paid the taxes and became and is the owner of the land.

In our opinion the trial court was correct in holding that the evidence fails to sustain plaintiff's claim of ownership.

The plaintiff testified that when he wrote George Baalson and

made, what he says was, an offer to purchase the land, he was under the impression that the administration of the estate of Henrietta Whitaker was still pending and that George Baalson was still acting as administrator of such estate. This is in harmony with the statement made in the letter from George Baalson wherein he says: "You state in your letter that I am the administrator of the estate. There must be some mistake as I was released some time ago as administrator." Of course, if at the time the plaintiff, Reitman wrote Baalson— (expressing his desire to purchase the land, coupled with an offer of what he would give for it)—he was of the belief that the land was part of the estate of Henrietta Whitaker then being administered by George Baalson as administrator, then in the very nature of things he could not have expected that the offer would result in a contract for the sale of the land by the acceptance of George Baalson, as it must be presumed that he knew that under the laws of the state the administrator would have no authority to sell the land except in a manner provided by the probate code, under which the land must be advertised for sale and sold to the highest bidder, either at public or private sale. Laws 1925, Ch 120, ND Rev Code 1943, §§ 30–1905, 30–1916. According to plaintiff's testimony, he informed Baalson in his telegram "that the time for redemption was about up." In other words, that the then owners of the land would lose their title to it unless redemption were made. In order that the then owners might have anything to sell, or the plaintiff, Reitman might have any opportunity to purchase from them, it was necessary that a redemption be made. Baalson's telegram to Reitman did not say that he accepted an offer to purchase the land. He said "If you desire purchase of property stated in your letter go ahead and pay taxes. Use this telegram of my authorization. Write me details at once."

It appears definitely and unequivocally from plaintiff's testimony that he was not interested in the purchase of George Baalson's interest in the land. He specifically disclaimed any intention or desire to purchase such interest. He stated posi-

tively that he desired to purchase the whole title or nothing. He asserted that his offer was for the entire title, that is, for the interest of all the owners and not for the title of George Baalson alone. There is no proof, and indeed there is no claim, that George Baalson had any authority, either oral or written, from his co-owners (or any one of them) to sell their interest in the land; and under the express provisions of the statute, George Baalson could in no event sell or contract for the sale of the interests of Joe Baalson, Athalie Whitaker or Ronald Whitaker, unless he was authorized by them in writing so to do. ND Rev Code 1943, § 47–1001; Brandrup v. Britten, 11 ND 376, 92 NW 453.

We wholly agree with the trial court that the evidence in this case fails to establish ownership in the plaintiff and does establish that the defendant, C. G. Gross, is the owner of an undivided 30/38ths fee simple estate in the land. This disposes of the only questions presented for determination on appeal, as no error has been assigned upon, and no complaint made of, that portion of the judgment which requires the defendant, Gross to pay to the clerk of the district court for the benefit of the plaintiff, Reitman the amount which Reitman paid on January 15, 1944 in redemption of the outstanding tax certificates against the land, together with interest on such sum.

The judgment appealed from is affirmed.

MORRIS, BURKE, NUESSLE and BURR, JJ., concur.

CHRISTIANSON, Ch. J. Plaintiff has petitioned for a rehearing. In such petition exception is taken to the following statement in the opinion:

"The only question presented and argued on this appeal is whether the plaintiff has established ownership of the land. It is contended on behalf of the plaintiff that he purchased the land from George Baalson and became and is the fee owner. The contention is predicated upon the proposition that the telegram of January 15th 1944, which is set forth above, constituted an

acceptance of plaintiff's offer to purchase. That as a result of such acceptance a contract came into being under which the plaintiff paid the taxes and became and is the owner of the land."

Immediately following this statement it is said:

"That never was our contention. We do not rely upon a strict contract of the sale of the land by George Baalson. What we have always claimed and claim now is that by virtue of the facts as proved by the testimony, which is not mentioned in the opinion, plaintiff became the equitable owner of the premises. That what plaintiff purchased was the right of redemption from George Baalson who was one of the owners. This is set out in Appellant's brief in the case. We never claimed that plaintiff purchased the fee title from George Baalson, but only the right to redeem, and plaintiff was to pay the amount required to redeem plus $1,000.00 to the former owners. He paid the redemption money on the last day for redemption and he has always been ready, able and willing to pay the $1,000.00 to the former owners. That the redemption was made on the last day and that if he had not so redeemed the land, all rights of the former owners would be lost."

The plaintiff is required in his complaint to state the facts constituting his cause of action. ND Rev Code 1943, § 28–0702. The only pleading on the part of the defendant is either a demurrer or an answer. ND Rev Code 1943, § 28–0704. The functions of the pleadings are to develop and present the precise points between the parties, to inform the court of the facts in issue, that it may declare the law, and the parties, that they may know what to meet by their proof. 41 Am Jur 288, 289, Pleading.

Our statute says:—"Issues arise upon the pleadings when a fact or conclusion of law is maintained by the one party, and controverted by the other. They are of two kinds: 1. Of law; and, 2. Of fact." ND Rev Code 1943, § 28–1202.

The complaint in this case consists of two paragraphs which read as follows:

"1. That the Plaintiff, Fred Reitman *is the owner in fee* sim-

ple of the following described premises situated in McLean County, North Dakota, to-wit:

East Half (E½) of Section Thirty-three (33) Township One Hundred Forty-seven (147), North, Range Eighty-two (82), West of 5th P. M., McLean County, North Dakota.

"2. That the defendants claim certain estates, interest in or liens or encumbrances upon the property adverse to the plaintiff, the particular nature of which is not known to this plaintiff."

The allegations of the answer of the defendant Gross are set forth in the former opinion. There was no amendment of the pleadings of either party.

The allegations of the complaint speak for themselves. There is the positive and unqualified allegation "that the plaintiff Fred Reitman *is the owner in fee simple.*" Upon the trial plaintiff testified that he had no deed from George Baalson or any of the other owners; that he made redemption from the tax sale by paying the amount due; that such redemption and payment were made pursuant to the telegram dated January 15, 1944, which is set forth in full in the former opinion. The testimony of the plaintiff upon the trial is quite positive that he was not seeking to purchase George Baalson's interest in the land, but that his offer was for all interests, that is, for the whole title to the land. On his cross-examination the plaintiff testified:

"Q. On the same day you paid the taxes, you received a telegram marked Exhibit 'C.' A. Yes.

Q. You received this telegram and came to Washburn and paid the taxes?

A. Yes.

Q. At that time you had not bought this land, had you?

A. I made an offer and he took me up on the offer. He took up the offer I made him according to the telegram.

Q. You understood this telegram to be an acceptance of your offer, did you? A. That is right.

Q. This telegram reads as follows: 'IF YOU DESIRE PURCHASE OF PROPERTY STATED IN YOUR LETTER GO AHEAD AND PAY TAXES USE THIS TELEGRAM OF MY AUTHORIZATION WRITE ME DETAILS AT ONCE.'

Did you gather from that that he had accepted your offer?
A. Yes.

Q. But there is nothing said in this telegram about accepting the offer, is there?

A. I don't know if he wanted to put it that way or not. . . .

Q. You would say, yes. Now, at the time you made the offer, was your offer of $1000.00 and the taxes for just George Baalson's interest in that land? A. No.

Q. You were making him an offer for all the land, were you?
A. Yes.

Q. At the time you made the offer, you thought that George Baalson owned it all, did you?

A. I never thought—I couldn't say what I thought then.

Q. When you made the offer for $1000.00, you made the offer not for George Baalson's interest, alone, but for all the interest in that land, is that right?

A. Yes, that is right. . . .

Q. Then you found out he only owned a 15/38ths interest?
A. Yes.

Q. Were you willing to go ahead with your offer of $1000.00 for a 15/38ths interest?

A. That whole amount was already made, I had redeemed the taxes, I already made that payment.

Q. You did not answer my question—were you willing to pay the offer you made for George Baalson's 15/38ths interest?

A. That is for all of it.

Q. You mean to testify that your offer was for all of it?
A. Yes.

Q. You would not pay him the amount offered for his interest in the land, you would not pay it for his interest? A. Right.

. . .

Q. At the time you made this first offer, apparently, you were under the impression that he was the administrator of the estate, were you?

A. Yes.

Q. In Plaintiff's Exhibit B, (letter) he explains to you that he is not the administrator. A. Yes.

. Q. You do not claim any interest, Mr. Reitman, in the ownership of this land that belongs to Joe Baalson, or to the Whitakers, do you?

A. After I made the deal, yes."

There is no reference in this testimony to an offer to purchase "from George Baalson the right to redeem." The plaintiff makes it quite plain that his offer to purchase covered the whole title or fee estate and nothing less, and he asserts that after he "made the deal" he claims interest "in the ownership of the land that belongs to Joe Baalson or to the Whitakers."

In the petition for rehearing it is stated that certain pages of appellant's brief "refer to the equity of the plaintiff and his rights as the equitable owner" of the land and it is said:

."We find no reference to the certificate of redemption in the opinion. What right would plaintiff get when he redeemed? He at least became the equitable owner of the premises. We may read the opinion through and we find not a word about the law of equity, nor do we find any reference to the evidence offered and received in support of our equitable rights. We may ask the question, what right has a person holding a certificate of redemption, What rights has a person who has paid for such certificate of redemption under the circumstances set out in the testimony in this case, where plaintiff saved $1,000.00 for the former owners, and in protecting them from the defendant George Gross who, the testimony shows, intended to procure the title to the land through tax proceedings by procuring an assignment of the tax certificate."

It is true that in the former opinion we did not use the terms "redeem" or "redemption," but stated that the plaintiff paid the taxes. Neither did we refer to the fact that upon the payment made by the plaintiff the usual receipts were issued. The issuance of such receipts would, of course, follow as a matter of course in the performance of official duty. And such receipts were issued, and they were introduced in evidence in this case. The opinion, however, left no doubt as to what occurred. The opinion shows the land had been sold for taxes and bid in by the county; that the tax sale certificates were assigned to the

defendant Gross, and that notice of expiration of the period of redemption had been issued thereon. It was these taxes that the plaintiff paid. And, according to our statute, the redemption from a tax sale is made by paying the amount paid by the purchaser at the tax sale, plus such interest and penalties as may be specified in the certificate. Laws 1931, Chapter 298, § 3; ND Rev Code 1943, § 57–2606. And when notice of expiration of the period of redemption has been issued, the cost incident to the service of such notice is added to the amount required to be paid. ND Rev Code 1943, §§ 57–2702, 57–2805, 57–2807.

This case does not involve the sale or transfer of an "equity of redemption." "Equity of redemption" is a term used in the law of mortgages "to describe either (1) The right in equity of the mortgagor to redeem after default in the performance of the conditions in the mortgage. (2) The estate which remains in the mortgagor after the execution of the mortgage." 42 CJ 432. See also, Bouvier's Law Dictionary. It is also used in a nontechnical sense to describe the title of the mortgagor without regard as to whether the condition of the mortgage has been broken. 15 Words & Phrases, Perm ed pp 79 et seq.

George Baalson was the owner in fee of an undivided 15/38ths interest in the land. His right to redeem from the tax sale was a legal right flowing from his ownership. A redemption from a tax sale by payment of the amount due does not operate as an assignment of a tax sale certificate or any right thereunder. The plaintiff acquired no interest or estate in the land by virtue of the redemption from the tax sale. The statute prescribes the following duties to be performed by the county auditor and the county treasurer upon redemption:

"The County Auditor shall certify to the amount due upon redemption, and on payment of the same to the County Treasurer, the said Treasurer shall make duplicate receipts for the certified amount, describing the property redeemed, one of which receipts shall be filed with the County Auditor, *which shall have the effect of annulling the sale.*" Laws 1931, Chap 298, § 3; ND Rev Code 1943, § 57–2606. (Italics supplied.)

In·this case no "certificate of redemption" was issued, but receipts as prescribed by the statute were issued upon the payment made by the plaintiff, reciting the payment by him of the sum specified in the receipts.

"A valid and effective redemption from a tax sale annuls the sale and divests the lien of the tax for which the land was sold, leaving it as free as before. . . . Redemption creates no rights in the land; it restores the owner to his title as it stood before the sale, exactly as it was, but restoring at the same time any liens, encumbrances, or conflicting claims which were previously operative against him. Neither does the redemption transfer to the owner any title or interest which the tax purchaser held independently of the tax sale." 61 CJ p 1287, § 1788.

We adhere to the former opinion. We are agreed that the evidence in this case fails to establish that the plaintiff has any interest or estate, either legal or equitable, in the premises in suit.

A rehearing is denied.

Burr, Neussle, Burke and Morris, JJ., concur.