The CIT GROUP/EQUIPMENT FINANCING, INC., f/k/a C.I.T. Corporation, Plaintiff and Appellant,

v.

The TRAVELERS INSURANCE COMPANY, The Travelers Indemnity Company, Defendants and Appellees,

and

Freddie G. Mutschler, Marlys A. Mutschler; Rick Mutschler and Donnie Mutschler, Defendants.

Civ. No. 920388.

Supreme Court of North Dakota.

Aug. 10, 1993.

---

Roger J. Minch (argued), of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff and appellant.

Cheryl L. Anderson (argued), of Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, for defendants and appellees.

MESCHKE, Justice.

The CIT Group/Equipment Financing, Inc., formerly known as C.I.T. Corporation (CIT), a judgment creditor of the mortgagors, appeals from a summary judgment dismissing its action against The Travelers Indemnity Company and The Travelers Insurance Company, the first and second mortgagees. CIT seeks to recover $68,860 in farmland rentals paid to the second mortgagee during the year of redemption after foreclosure of the first mortgage. We affirm.

Freddie and Marlys Mutschler farmed land in Stutsman, Barnes, Griggs and Pembina counties. In 1976, they borrowed $1,500,000 from Travelers Insurance, secured by a first mortgage on the land with an assignment of rents. Within a month, Travelers Insurance assigned the first mortgage to a related but separate company, Travelers Indemnity.

In 1981, Freddie and Marlys borrowed another $500,000 from Travelers Insurance, giving it a second mortgage on land in Stutsman, Barnes and Griggs counties and a separate assignment of rents to be operative upon default. In March 1982, Travelers Indemnity partially released its

first mortgage on the Pembina County land to enable the sale of that land.

On January 6, 1983, Freddie and Marlys filed for bankruptcy. On April 20, 1983, CIT sued Freddie and Marlys in the bankruptcy court to establish that they had fraudulently induced CIT, with a false financial statement, to loan them funds to purchase a Cessna Citation jet. CIT had repossessed the jet after default and sought a nondischargeable deficiency judgment. On November 7, 1984, the bankruptcy court ruled that their debt to CIT was nondischargeable and, on November 26, 1984, the court entered a deficiency judgment for $640,860.84 plus interest against Freddie and Marlys in favor of CIT. On July 3, 1986, after the deficiency judgment was affirmed on appeal, the bankruptcy court dismissed the bankruptcy case.

CIT then attempted to collect its deficiency judgment. On July 9, 1986, CIT obtained an execution from federal district court directing the United States Marshal to collect the judgment. On July 23, 1986, the Marshal issued notices of levy upon the mortgaged farmland and the redemption rights of Freddie and Marlys. In addition to describing the farmland subject to the first mortgage to Travelers Indemnity and the second mortgage to Travelers Insurance, the notices described "[a]ll of Freddie Mutschler and/or Marlys Mutschler's equity of redemption defined by North Dakota Century Code § 28–24–11." The notices of levy were served on Freddie and Marlys, and filed with the register of deeds offices in Stutsman, Barnes and Griggs counties. No further steps were taken by CIT at that time to enforce the levy. No execution sale was held.

Because Freddie and Marlys had defaulted on the first mortgage, Travelers Indemnity began foreclosure against them in November 1986. CIT was made a party to the foreclosure action. CIT, however, did not file an answer to the foreclosure, but did write Travelers Indemnity that it claimed rights under the July 1986 levy.

On March 1, 1987, Freddie and Marlys orally agreed to rent the land to their sons, Rick and Donnie Mutschler, with an option to rent it again in 1988 and 1989. Freddie, Marlys, Rick, Donnie, Travelers Indemnity and Travelers Insurance settled the foreclosure on May 22, 1987. Freddie and Marlys agreed to withdraw their answer to Travelers Indemnity's foreclosure action on the first mortgage, to allow a default judgment, and to deed the farmland to Travelers Indemnity, effective immediately after the foreclosure sale, in return for a release from personal liability for the deficiency on the first mortgage loan, which had a balance due of nearly $3,000,000. Freddie and Marlys further agreed to the enforcement of the assignment of rents for the second mortgage, thereby agreeing to the payment of the rents from the lease with their sons to Travelers Insurance. Travelers Insurance in turn agreed to release Freddie and Marlys from personal liability on the second mortgage, which had not been foreclosed and had a balance due of nearly $1,000,000. Travelers Insurance leased the farmland in 1987 to Rick and Donnie for $68,860.

Foreclosure of the first mortgage was decreed on July 1, 1987. The judgment recited that the redemption rights of Freddie and Marlys were "subject to the terms of the settlement agreement entered into by and between ... Travelers Indemnity ..., and ... Freddie and Marlys ..., executed on the 22nd day of May, 1987." The sheriff's sale on foreclosure took place on September 8, 1987. On December 1, 1987, during the usual redemption period, Rick and Donnie paid the $68,860 for 1987 rent to Travelers Insurance. CIT received nothing from the Mutschlers or the Travelers companies. No redemption was made, and Travelers Indemnity received a sheriff's deed to the farmland.

CIT sued the Travelers companies for the $68,860 paid Travelers Insurance by Rick and Donnie for the 1987 farm rent. Based on these undisputed facts, both CIT and the Travelers companies moved for summary judgment.

CIT argued that the Mutschlers' equity of redemption included the $68,860 rental that belonged to Freddie and Marlys absent

the settlement agreement, and that this equity of redemption was subject to execution and levy like any other property. Because Freddie and Marlys had not claimed any specific exemption for their equity of redemption, and because the equity of redemption began when the mortgage foreclosure sale took place, CIT argued that it was entitled to the 1987 rental payment by virtue of its July 1986 execution and levy.

The Travelers companies argued that a creditor cannot involuntarily divest a debtor of the equity of redemption by levying on that right separately from the debtor's entire interest in the land because the equity of redemption is intended for the debtor's protection. They further argued that the Mutschlers were free to voluntarily assign their equity of redemption to Travelers Insurance, and that CIT is therefore not entitled to the 1987 rental payment.

The trial court agreed with the Travelers companies, concluding that the Mutschlers' "redemption rights are not subject to levy by [CIT] as a creditor" and that the Mutschlers "may dispose of those rights as they see fit." The court dismissed CIT's claims against the Travelers companies.[1] CIT appeals.

We affirm for reasons that differ somewhat from the trial court's. Even if we were to agree with CIT that a debtor can be involuntarily divested of the equity of redemption by a judgment creditor, we believe that CIT did not become entitled to the 1987 rental payment because it did not acquire the Mutschlers' equity of redemption through an execution sale.

■ We have said that the "equity of redemption" describes "'either ... [t]he right in equity of the mortgagor to redeem after default in the performance of the conditions in the mortgage ... [or] [t]he estate which remains in the mortgagor after the execution of the mortgage.'" *Reitman v. Whitaker*, 74 N.D. 504, 23 N.W.2d

393, 400 (1946) [quoting 42 C.J. 432]. For this foreclosure, NDCC 28–24–11 fixed the equity of redemption:

> *Debtor entitled to rents during redemption period.*—The debtor under an execution or foreclosure sale of his property shall be entitled to the possession, rents, use, and benefit of the property sold from the date of such sale until the expiration of the period of redemption.

Under this statute, a mortgagor is entitled to possession of, and to the rents and profits derived from, mortgaged real property from the time of the foreclosure sale until title is divested by expiration of the period of redemption. *See East Grand Forks Federal Sav. & Loan Ass'n v. Mueller*, 198 N.W.2d 124 (N.D.1972); *Skinner v. American State Bank*, 189 N.W.2d 665 (N.D. 1971); *Farm Mortgage Loan Co. v. Pettet*, 51 N.D. 491, 200 N.W. 497 (1924). We assume, for purposes of this case, that the Mutschlers' equity of redemption under NDCC 28–24–11 is an equitable interest in real estate that, under NDCC 28–21–08, is subject to execution, levy, and sale by a judgment creditor.

■ A levy of execution does not, without more, entitle the judgment creditor to immediate possession of, or to the rents for, real property levied upon. Generally, the judgment creditor is entitled to possession and rents only after purchasing the real property at the execution sale, expiration of the period of redemption, and receiving a conveyance from the sheriff. *See* 4 *Tiffany Real Property* § 1241 (3rd ed. 1993 Cum.Supp.); *Griffiths v. Hammon*, 560 P.2d 1375, 1376 (Utah 1977). In North Dakota, legal title to real property remains in the judgment debtor after execution, levy, and sale until the period of redemption has expired. *See Finch, Van Slyck & McConville v. Jackson*, 57 N.D. 17, 220 N.W. 130, 133 (1928); *State ex rel. Forest Lake State Bank v. Herman*, 36 N.D. 177, 161 N.W. 1017, 1019 (1917). In other

---

1. According to CIT, the Mutschlers were named as defendants "only in case they claimed some interest" in the $68,860 rental payment. None of the Mutschlers made an appearance in this case. The trial court certified under NDRCivP 54(b) that "because the claims against ... Trav-

elers Indemnity ... and ... Travelers Insurance ... are the only substantive claims before the Court in this matter, and there are no outstanding factual issues, there is no just reason for delay and the Court, therefore, directs entry of final judgment."

words, upon an execution sale of real property, the purchaser acquires all of the interest that the judgment debtor possessed at the time the judgment was docketed, free from any subsequent liens, but subject to prior rights and liens and to the right of redemption. *See Kulm Credit Union v. Harter,* 157 N.W.2d 700, 705 (N.D.1968). A levy of execution without a sale of real property results in the judgment creditor having, at best, a lien, not an immediate right to possession. *See* NDCC 28–20–13;[2] 30 Am.Jur.2d *Executions* § 400 (1967); 33 C.J.S. *Executions* § 125 (1942). Under NDCC 35–01–08, a lien transfers no title to the property subject to the lien.

■ In this case, CIT never followed through on the lien of its execution levy by holding an execution sale of the Mutschlers' equity of redemption. *See* NDCC 28–21–07 [execution must be returnable to clerk within either 60 or 90 days, depending on whether a sheriff's levy is made within the 60 days after its receipt by the officer]. Without an execution sale of the Mutschlers' equity of redemption, which would have ripened into an enforceable right to possession, though subject to prior liens, upon expiration of the period of redemption, CIT never stepped into the shoes of the Mutschlers and never became owners of their equity of redemption.

■ CIT's interest was not greater than that of an inferior lienholder. *See* NDCC 35–01–14. The Mutschlers' possessory rights to their equity of redemption were superior to CIT's judgment lien, at least until expiration of the redemption period for a judgment execution sale that CIT never held.[3]

We conclude that CIT is not entitled to the $68,860 in 1987 rental payments and that the trial court properly dismissed CIT's claim. Accordingly, the summary judgment is affirmed.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.

**2.** It is unclear from the record whether CIT's federal court judgment was docketed pursuant to NDCC 28–20–13. We will assume, however, that the procedures for enforcement of foreign judgments under NDCC Chapter 28–20.1 were followed. NDCC 28–20.1–03(3) ["No execution or other process for enforcement of a foreign judgment filed hereunder may issue until ten days after the date the judgment is filed"]. *See In re Haugen,* 998 F.2d 1442 (8th Cir.1993). NDCC 28–20.1–01 says that a judgment of a court of the United States is a "foreign judgment" for enforcement under that chapter.

**3.** Arguably, Travelers Insurance's assignment of rents on the second mortgage with the Mutschlers, the interest that CIT seeks to defeat by levying on the Mutschlers' equity of redemption obtained through Travelers Indemnity's foreclosure of the first mortgage, is also superior to CIT's lien. That assignment of rents on the second mortgage, which was properly recorded and not foreclosed, pre-dated CIT's judgment and execution levy by several years.

This court has held that a mortgagee's enforcement of an assignment of rents contained in a real estate mortgage prior to the foreclosure of that mortgage does not violate NDCC 28–24–11. *East Grand Forks Federal Sav. & Loan Ass'n v. Mueller,* 198 N.W.2d 124 (N.D. 1972); *Skinner v. American State Bank,* 189 N.W.2d 665 (N.D.1971). It is an open question whether NDCC 28–24–11 is violated when a second mortgagee, who has not foreclosed, enforces an assignment of rents against a mortgagor during the period of redemption from the foreclosure of a first mortgage covering the same property. It is unnecessary to decide that question here. The Mutschlers, who would be the proper parties to challenge enforcement of the second assignment of rents, did not appear and complain, and CIT never obtained a possessory interest in the Mutschlers' equity of redemption sufficient to entitle it to make that challenge.